MANTLE ET AL., respondents, *v.* NOYES, appellant.

EQUITY — *Procedure* — *Findings of jury not binding on judge.* — In a suit in equity to quiet title the decree emanates from the judge sitting as a chancellor. In such action he may try the case without a jury, or he may submit special issues to the jury; but their findings of fact are not binding upon him; he may adopt or disregard the same, or make findings of his own and render his decree thereon. This rule has not been changed by the act of congress of April, 1874, which provides that it shall not be necessary in the courts of the several territories to exer-

cise separately the common law and chancery jurisdiction vested in said courts.

*Patent for public lands previously granted is void.*— The action of the land department of the United States in issuing a patent for public lands, subject to sale by pre-emption or otherwise, when acting within the scope of its authority, is conclusive upon the legal title; but a patent for lands which have previously been sold by the government is void, and may be collaterally attacked in an action at law.

*The same — Placer patent — Quartz claim within boundaries of.*— A patent to a placer claim, issued under section 2333 of the United States Revised Statutes, passes no title to a previously located quartz or lode claim, included within its boundaries; and whether or not the placer applicant knew of the existence of such lode or quartz claim is immaterial.

*Appeal from Second District, Silver Bow County.*

THOS. L. NAPTON and J. C. ROBINSON, for appellant.

The court erred in giving judgment for plaintiffs without the jury first finding upon all facts submitted.

The patent is a bar to plaintiffs' recovery unless it was shown that defendant knew of the existence of the lead, or, at least, that the existence of the lead was generally known.

The reservations in placer patents of all quartz leads known to exist are void. This question is adjudicated in the land office, and nothing is reserved except that which is known to exist in that office. Copp's Mining Decisions, pp. 222–23.

The government only can attack the patent. The quartz claimant should have protested against the placer patent as the only way to save his rights.

As to what passes by a patent, see 6 Otto, 530; 13 Wall. 72; 93 U. S. 674; 24 Cal. 562; 7 Nev. 249.

A court of equity alone can grant relief and vacate the patent. 18 Wall. 265; 3 Sawy. 165.

As to right to show character of land after patent, see 28 Cal. 99; 1 Otto, 339.

If plaintiffs recover at all, it can only be the lead itself, or at most with twenty-five feet of surface.

The jury did not find the extent of the lead, and only in one place found it four feet wide.

Failure to file adverse claim to defendant's application would forfeit any further rights of plaintiffs.

W. W. DIXON, for respondents.

1. This action is in equity to quiet title. The findings of the jury were merely advisory and not binding upon the court. The court adopted such as it thought correct and made them its own. See Decree, Transcript, pp. 45 and 46. The appeal is from the judgment alone. The record does not show that appellant requested any findings when the cause was submitted, or had such request entered on the minutes, or that he made any objection or took any exception to any defects in the findings; and hence, under section 270, p. 89, Code of Civil Procedure of Montana Territory, no objection to findings or the want of them can be taken here. Besides, in respondents' view of the case, the question as to whether or not the lode or vein was known to *appellant* to exist is wholly immaterial.

The law (U. S. R. S. sec. 2333) says a vein or lode "known" to exist. It does not require personal or actual knowledge in the applicant for the placer patent. It does not say "known to the applicant" to exist.

The jury and the court both found (Findings 1 and 2, Transcript, p. 35) that the vein or lode was known to some person to exist, and that its existence could have been ascertained by a person examining the ground with an honest endeavor to ascertain if it contained any vein or lode.

Besides it is undisputed that the grantor of respondents had, nearly eight months before appellant's application for his placer patent, discovered the vein or lode and marked the boundaries of the claim and recorded notice thereof, in all respects making a valid location under the laws of the United States and of Montana territory.

This was, of itself and by law, notice to and knowledge by appellant of the existence of the vein or lode, and he could not be heard to deny such notice or knowledge. The vein or lode was discovered, actually known to some person to exist, and could have been ascertained by any one examining the ground with an honest endeavor to ascertain if it contained such vein or lode; and a discovery of the vein and a location and record of the lode claim had been duly made and its boundaries marked out long before appellant applied for his placer patent.

If, in such cases, personal knowledge must be brought home to the placer claimant, the evident policy and intention of the law would be often defeated, the placer claimant's wilful or pretended ignorance would be his best protection, and it would be an inducement to him to avoid all information and means of knowledge, instead of endeavoring to ascertain the facts and comply in good faith with the law.

The law evidently supposes that a man has and must have some knowledge of his own property and what is visible upon it and of what others know concerning it, and that he knows that of which he has record notice, and which moreover he could ascertain by observation with an honest endeavor to find out the facts. If he shuts his eyes to the record and to what others know, and to what he can easily ascertain by observation, and this in a matter where the law, as a condition of its bounty and for its own protection, requires him to ascertain the facts, the law will not admit his plea of want of knowledge, but will hold him to the terms of the statute, and not permit him to acquire title to lodes under the guise of placers.   21 Wall. 674, cited by appellant, does not seem to be in point here as to the meaning of the word " *known*."

2. The theory that a lode claim may exist within the limits of a placer claim is the theory of the statute itself. R. S. U. S. sec. 2333.. The placer applicant for patent

acquires all (a placer claim) that he asks from the government, and pays for that only, at a lower price than for lode claims. But he does not acquire what is known to exist and what he must include in his application in order to acquire, and what he is by law conclusively declared to have no right of possession to, if he does not so include it, to wit, a lode claim. The intention of the law evidently was to reserve from the placer patent the lode claim, if it was known to exist and not applied for, not only for the benefit of the government, which would thus obtain a higher price for the land, but also for the benefit of the public, that any one who desired to claim or work lode rather than placer claims, might do so.

The question as to whether a lode or vein is known to exist within a placer claim is not adjudicated in the land office. Otherwise no reservations of lode claims would be inserted in the placer patent, nor would the failure to include the lode claim in the placer application be *conclusive*, as it is made by the law. And under the statute it is the *application* (not the patent or the decision of the land office) for the placer claim, which does not include an application for the known vein or lode, that is made *a conclusive declaration* that the placer claimant has no right of possession to the vein or lode claim. And besides, the law further provides that if the existence of a vein in the placer claim is not known, the placer patent conveys it. The converse must be true, that, if it is known, the patent for the placer does not convey it.

It may be noted here that the record does not show that the matter as to existing veins or lodes was ever brought up or heard in the land office in this case, or that respondents did, or did not, file any adverse claim in that office to appellant's application for his placer patent, although appellant in his brief announces some of these facts as shown.

The reservation of lode claims in the placer patent is not void. The statute makes the reservation itself.

Even if the reservation was omitted from the patent, the effect would be the same. A patent of land reserved, or a patent issued contrary to law, is void, and this may be shown even in an action at law. *Morton* v. *Nebraska* (cited by appellant), 21 Wall. 675; *White* v. *Cannon*, 6 Wall. 473, and many other cases.

3. An action like this is not an attack on the placer patent and need not be brought by the government. Appellant's patent is only good so far as it is authorized by law. Respondents do not impeach it, but only seek to show what, under the law and the terms of the patent itself, was conveyed. See authorities last above cited, and also *Stark* v. *Starr*, 6 Wall. 402; *Henshaw* v. *Bissell*, 18 Wall. 255.

Of course a patent issued in pursuance of law conveys the title of the government, but if issued without authority of law it conveys nothing. The decisions of the land department as to matters of fact within its jurisdiction will not be reviewed by the courts except in case of fraud, but the courts will review and correct, if erroneous, their decisions upon questions of law. *Moore* v. *Robbins*, 6 Otto, 535, and other authorities cited by appellant.

The case in 28 Cal. 99, cited by appellant, only holds that, under a patent from the state for swamp land, another party could not prove that the land was not swamp land without first showing that he was in possession under some right or title derived from the state or from the United States.

In the case at bar respondents do show possession of their lode claim under right from the United States, that is, under the mining law of 1872, which gave them under their location a grant from the government.

4. Not many decisions of the courts seem to have been made under the section of the United States Revised Statutes here in question, but such as have been made support respondents' positions. See decision of Secretary Teller in *Mike & Starr G. & S. M. Co.* in The

Reporter (Washington) for July, 1883, p. 218. See, also, *Iron S. M. Co.* v. *Sullivan* in United States circuit court for Colorado (opinion by Judge McCrary), 16 Federal Reporter, p. 829, where it was held that the vein or lode excepted from the grant or patent of a placer claim is a vein or lode discovered, staked and located. This case was appealed to the United States supreme court and is reported in 109 U. S. 550. The decision of the court below was reversed upon the ground that the point upon which the decision was based was not raised by the pleadings.

Particular attention is called to this last decision in 109 U. S. It, as well as Judge McCrary's decision, recognizes the doctrine that where a vein is known to exist it does not pass by the placer patent, and that this question may be raised in an action of ejectment between the lode and placer claimants, thus upsetting appellant's theory that these matters are decided in the land office and that the patent is conclusive.

The case at bar comes directly within both the above decisions. The lode claim here was proved to have been located, marked or staked and recorded before appellant's application for his placer patent, and it is so alleged in the complaint, and also that the vein or lode was known to exist; and both of these decisions hold and agree that on such a state of facts the lode claimant's right is best.

5. The only other point made in appellant's brief is, that, as he contends, the vein or lode itself, as distinguished from the lode claim, or at most only the vein or lode and twenty-five feet of surface ground on each side, is excepted from the placer patent. This theory is not supported by the language of the statute. The twenty-five feet of surface on each side of the vein or lode is only mentioned in prescribing the quantity of ground for which the placer claimant shall pay as a lode claim, if he includes the lode in his application, and, as a favor to him, he only pays for the smaller quantity of surface

ground allowed for a lode claim. But where the statute provides for the case of a placer applicant who does not apply for a known vein, it uses the word "*claim*," and says that "an application for a patent for such placer claim which does not include an application for the vein or lode *claim* shall be construed as a conclusive declaration that the claimant of the placer claim has no right of possession of the vein or lode *claim*"— not of the *vein* or *lode* alone, but of the "*claim*."

The "claim" includes the surface ground located as well as the veins within it, and certainly, where, as in this case, the lode claim was located, staked and recorded long before the application for the placer patent, the court below was right in holding that appellant, by his placer patent, acquired no right to any part of the lode claim, but that the whole of it was excepted out of such patent. The case above cited, in 109 U. S. 550, seems also to sustain this view, although the point was not directly raised.

The judgment of the district court should be affirmed.

WADE, C. J. This is an action in equity to quiet title. The respondents claim the ground in question under the name of the Pay Streak quartz lode mining claim, by virtue of a location thereof according to law, on the 23d day of April, 1878, under the act of congress of May 10, 1872. The appellant having, on the 23d day of July, 1880, procured a patent from the government for a certain placer mining claim, under the same act of congress, by virtue of his application of December 14, 1878, which includes within its boundaries the ground claimed by respondents as a quartz lode location, claims title and right of possession to the ground in dispute by virtue of his patent aforesaid.

The cause was submitted to a jury on special issues, who returned into court, in substance, the following findings of fact: That on and prior to December 14, 1878, a

vein of quartz or other rock in place, bearing gold and silver, was known to exist within the limits of the ground in controversy; that the existence of said vein or lode could have been ascertained on and prior to December 14, 1878, by any person examining the ground with an honest endeavor to ascertain if it contained any such vein or lode.    That Finn and McEwen, predecessors and grantors of plaintiffs, in the month of April, 1878, discovered within the limits of the ground in controversy a vein or lode of quartz, with at least one well-defined wall, bearing gold and silver; that said Finn and McEwen, at the time of making said discovery, posted a notice upon the ground in controversy, claiming said ground, and the lode or vein which it included, as a lode mining claim, and at the same time distinctly marked on the grounds by stakes, so that its boundaries could be readily traced, the said mining claim and location, which was named by them in said notice and location the Pay Streak lode; that said Finn and McEwen posted said notice and marked their location upon the ground claimed by them as the Pay Streak lode, which ground included within its limits the vein or lode which they had discovered; that said Finn and McEwen, in the month of April, 1878, and within twenty days after they claimed to have discovered a vein or lode, made and filed in the proper county, notice and claim of location of the Pay Streak lode such as was commonly employed in claiming and recording lode claims in that mining district; that said Finn and McEwen, about the 12th day of July, 1881, conveyed to plaintiffs their interest in the ground claimed as the Pay Streak lode claim, in controversy in this action, and that the plaintiffs, on or about the 2d day of August, 1881, and before the commencement of this action, caused a survey to be made of the ground claimed by them as the Pay Streak lode claim, and marked the location claimed by them distinctly on the ground, so that its boundaries could be readily traced; that the plaintiffs, at about the same time, posted a notice

on the ground so surveyed, claiming the same as the Pay Streak lode claim, a duplicate of which notice was in evidence as the recorded notice and claim of relocation of the Pay Streak lode claim, which notice, within twenty days after such relocation, was made and filed in the recorder's office of the proper county; that the ground in controversy in this action is the same ground claimed to have been surveyed and relocated by plaintiffs, in August, 1881, and is the same ground, or part of the same, that Finn and McEwen claimed to have located as the Pay Streak in April, 1878; that the ground claimed to have been surveyed and relocated by plaintiffs in August, 1881, included within its limits the place where Finn and McEwen claim to have discovered a vein or lode in April, 1878; that plaintiffs had possession of the ground in controversy, working the same, at the date of the commencement of this action; that the appellant, on the 14th day of April, 1878, applied for, and on the 28th day of July, 1880, obtained a patent from the United States, which included within its limits the ground in controversy. And as to the question whether there was any vein or lode known to the appellant to exist within and upon the premises in controversy when he applied for a patent, the jury answered and said that they could not agree.

Upon these facts, judgment was rendered for respondent for the ground in question, from which the appellant appeals to this court. There does not seem to have been any question at the trial, or claim on the part of appellant, that the Pay Streak mining claim and location of April 23, 1878, had ever been, in any manner, abandoned or forfeited, or that the relocation of respondents of August 2, 1881, was not of the same ground originally located as the Pay Streak mining claim. As to whether this claim was known to the appellant to exist within and upon the premises in controversy, when he applied for and obtained a patent for said ground as a placer

claim, the jury could not agree, and this disagreement suggests the questions upon which appellant asks a reversal of the judgment:

1. Was it within the authority and jurisdiction of the court to have rendered a judgment for the plaintiff for the ground in question, the jury not having found upon all the interrogatories submitted to them by the court?

2. Did the placer patent necessarily include the lode mining claim location, unless such lode claim was known to appellant to exist at the time or before he applied for his patent? and is this question determinable in this action, or was it conclusively adjudicated in the land office?

1. As to the first question: This is a suit in equity to quiet title. The decree emanates from the judge sitting as a chancellor, and he is responsible for the decree. In actions of this character the judge may try the case without a jury, or he may submit special issues to the jury, but their finding of fact is not binding upon the chancellor. He may adopt or disregard the findings of the jury, or make findings of fact of his own, and render his decree thereon. In the case of *Gallagher* v. *Basey*, 1 Mont. 461, 462, this court held: " That, under and by virtue of the act organizing this territory, the supreme court, and the district courts, are clothed with chancery as well as common law jurisdiction, and, in the exercise of the authority thus conferred, the forms of proceedings must conform to the well-known and recognized distinctions pertaining to said jurisdictions as limited by law; that is to say, causes in equity wherein equitable relief is demanded, or where an equitable defense is made to a claim at law, must be tried as in a court of chancery, and that the decree must proceed from the judge sitting as a chancellor, and it would be error in the class of cases described to try them as at law to a jury; that it is competent to limit and control, by statute, the forms of proceedings in actions at law and suits in equity, but that no statute and no law of our legislature can, in any

manner, destroy or blend together these separate and
distinct jurisdictions; that our organic act recognizes a
distinction between suits in equity and actions at law,
and that the substance of this distinction must be pre-
served, although the forms of proceedings may be pre-
scribed and limited by law, and that the Civil Code may
be followed in equity cases, so far as the same is appli-
cable, but that care must be taken to preserve the distin-
guishing features of a suit in chancery. . . . The
suit under consideration was a bill in chancery wherein
the equitable jurisdiction of the court was properly in-
voked, and the record herein clearly shows that it was
tried to the court sitting as a chancellor, and that the de-
cree emanates from the chancellor; and that the ques-
tions submitted to the jury were to aid the conscience of
the court, but not to control it, as fully appears from the
fact that, while the jury answered that, as against the
plaintiffs, the defendants had not diverted or appropri-
ated the waters of the stream to the injury or damage
of the plaintiffs, the court found precisely to the con-
trary, that the defendants had diverted and appropriated
said waters, to the damage and injury of the plaintiffs,
and based a decree for a perpetual injunction upon this
fact."

All this applies strongly to the case we are considering;
for here, as in the case cited, the court, in rendering its
decree, disregarded some of the findings of the jury, and
adopted others of their findings as its own; and, as to
some questions of fact, made independent findings upon
the proofs and admissions in the pleadings, treating the
findings of fact by the jury as merely advisory, but not
binding upon the court. This, under the authority cited,
was clearly within the authority and jurisdiction of the
court, and the decision in the case of *Gallagher* v. *Basey*
is approved.

The force of this is not invalidated by the act of con-
gress of April, 1874, which declares that it shall not be

necessary, in the courts of the several territories of the United States, to exercise separately the common law and chancery jurisdictions vested in said courts, and that the several codes and rules of practice adopted in said territories respectively, in so far as they authorize a mingling of said jurisdictions, or a uniform course of proceeding in all cases, whether legal or equitable, be validated and confirmed. Sup. R. S. U. S. 12.

Subsequent to the enactment of that statute (October, 1874), the supreme court of the United States, in the case of *Gallagher* v. *Basey*, 20 Wall. 679, appealed from the supreme court of this territory to that court, says: "By the organic act of the territory,. the district courts are invested with chancery and common law jurisdiction. The two jurisdictions are exercised by the same court, and under the legislation of the territory the modes of procedure, up to the trial or hearing, are the same, whether a legal or equitable remedy is sought. The suitor, whatever relief he may ask, is required to state, ' in ordinary and concise language,' the facts of his case upon which he invokes the judgment of the court. But the consideration which the court will give to the questions raised by the pleadings when the case is called for trial or hearing, whether it will submit them to a jury or pass upon them without any such intervention, must depend upon the jurisdiction which is to be exercised. If the remedy sought be a legal one, a jury is essential, unless waived by the stipulation of the parties; but if the remedy sought be equitable, the court is not bound to call a jury, and if it does call one, it is only for the purpose of enlightening its conscience, and not to control its judgment. The decree which it must render upon the law and the facts must proceed from its own judgment respecting them, and not from the judgment of others. . . . The formal distinctions in the pleadings and modes of procedure are abolished; but the essential distinction between law and equity is not changed. The

relief which the law affords must still be administered through the intervention of a jury, unless a jury be waived; the relief which equity affords must still be applied by the court itself, and all information presented to guide its action, whether obtained through masters' reports or findings of a jury, is merely advisory. Ordinarily, where there has been an examination before a jury of a disputed fact, and a special finding made, the court will follow it. But whether it does so or not must depend upon the question whether it is satisfied with the verdict. This discretion to disregard the findings of the jury may undoubtedly be qualified by statute; but we do not find anything in the statute of Montana regulating proceedings in civil cases which affects this discretion. That statute is substantially a copy of the statute of California, as it existed in 1851, and it was frequently held by the supreme court of that state that the provision in that act requiring issues of fact to be tried by a jury, unless a jury was waived by the parties, did not require the court below to regard as conclusive the findings of a jury in an equity case, even though no application to vacate the findings was made by the parties, if, in its judgment, they were not supported by the evidence." *Still* v. *Saunders*, 8 Cal. 287; *Goode* v. *Smith*, 13 id. 81; *Duff* v. *Fisher*, 15 id. 376; *Weber* v. *Marshall*, 19 id. 447.

The provision of our Code of Civil Procedure is the same as that of California, and provides that, in all cases, issues of fact must be tried by a jury (R. S. 83, sec. 251); but the decision of the supreme court of the United States, since the act of congress of 1874, validating and confirming the codes and rules of practice in the territories which prescribe a uniform course of proceeding in all cases, whether legal or equitable, and the decision of our own supreme court before that act, under a code containing the same provision as to the trial of questions of fact, ought to be conclusive upon the question that an equity case should be tried by the court, and that it is

discretionary with the court whether special issues be submitted to a jury to aid the court in arriving at the facts, and that such special issues and findings may be adopted or rejected by the court, as the evidence may require.

2. Was it necessary for the court to have found that the defendant knew of the existence of the Pay Streak location and claim at or before the date of his application for a patent to placer ground, in order to have rendered a judgment in favor of respondents?

The statute of the United States providing the manner and mode of proceeding to obtain a placer patent to ground that does or does not contain within its boundaries a lode mining claim is as follows (R. S. U. S. sec. 2333): "When the same person, association or corporation is in possession of a placer claim, and also a vein or lode, included within the boundaries thereof, application shall be made for a patent for the placer claim, with the statement that it includes such vein or lode, and in such case a patent shall issue for the placer claim, subject to the provisions of this chapter, including such vein or lode, upon the payment of $5 per acre for such lode claim, and *twenty-five feet* of surface on each side thereof. The remainder of the placer claim, or any placer not embracing any vein or lode claim, shall be paid for at the rate of $2.50 per acre, together with all costs and proceedings; and where a vein or lode such as is described in section 2320 is known to exist within the boundaries of a placer claim, an application for a patent for such placer claim which does not include an application for the vein or lode claim shall be construed as a conclusive declaration that the claimant of the placer claim has no right of possession of the vein or lode claim; but where the existence of a vein or lode in a placer claim is not known, a patent for the placer claim shall convey all valuable minerals or other deposits within the boundaries thereof."

Section 2320 defines the extent of a lode mining claim, and provides that, unless controlled by the customs and regulations of the miners, or the local laws, such lode claim may extend one thousand five hundred feet in length along the vein or lode, and three hundred feet on each side of the middle of the vein at the surface. This is the kind of a lode mining claim referred to in the section above quoted, and which, if known to exist within the boundaries of a placer claim for which application is being made for a patent, and which does not include an application for such vein or lode claim, shall be construed as a conclusive declaration that the placer claimant has no right to the possession of the vein or lode claim.

There is a vast difference between a vein or lode and a vein or lode mining claim. A vein or lode may be entirely concealed beneath the earth's surface, and unknown to exist, while a lode mining claim is on the surface, exposed to view, designated by stakes and monuments, so that its boundaries may be readily traced, besides a notice posted on the claim and a record of the location in the proper county. By the terms of the statute, it is a vein or lode in a placer claim, the existence of which is not known, that the placer patent carries with it. There is no provision in the statute which authorizes the placer claimant to acquire title to a lode mining claim by virtue of his placer patent. If the lode mining claim is known to exist, the placer applicant must also apply for a patent for such lode mining claim. He acquires no title to the lode claim by virtue of his placer patent; and if he makes no application for the lode claim, he is conclusively presumed to have no right to or interest in it. The theory of the statute is, that a vein or lode of quartz may exist in placer ground that is unknown, because it may be concealed beneath the surface, and afterwards uncovered by working the placer claim; but no such presumptions can arise as to a lode mining claim, which must exist on the surface, and be distinctly

marked and bounded, so that the same may be desig-
nated and distinguished from all other property. A lode
mining claim is a definite, distinct and certain tract or
parcel of land, the same as is a farm or a town lot; and a
location according to law, and the record thereof, is the
title by which it is held and owned. The location of a
quartz lode mining claim, perfected according to law,
creates an existing outstanding grant of the exclusive
right to the possession and enjoyment of all the surface
ground included within the boundaries of the claim; and
such a location is just as much a withdrawal from the
public domain, of the right to the possession of the prop-
erty located, as is the fee withdrawn by a valid grant
from the United States under the authority of law, or
the possession by a valid and subsisting homestead or
pre-emption entry. Such a location when perfected has
the effect of a grant by the United States of the right of
present and exclusive possession. *Belk* v. *Meagher*, 104
U. S. 279.

In the case of *The Silver Bow Mining Co.* v. *William
A. Clarke et al.* 5 Mont. *infra*, decided at the present
term, this court used the following language: "Having
discovered a vein or lode and made a location thereon
according to law, the locator then becomes entitled to the
exclusive right to the possession and enjoyment of all
the surface ground included within the lines of his loca-
tion. This is the express provision of the statute, sec-
tion 2322, and is in harmony with section 2319, which
declares that the ground in which the mineral deposit
may be found shall be open to occupation and purchase.
The right to acquire the full title which attaches to and
accompanies every valid location of a mining claim,
ought to be, and is, followed by the right to the exclu-
sive possession and enjoyment of the soil of such claim.
. . . This statute is a pre-emption law, and by the
location of a mining claim under it, the grounds included
within the boundaries of the location are just as much

withdrawn from the public domain as the fee is by a valid grant from the United States under the authority of law, or the possession under a valid and subsisting homestead or pre-emption entry. This statute is an offer to sell the public mineral lands by the owner thereof, and the locator, by making a location thereon, accepts the offer, thereby closing the contract of purchase, and the purchaser becomes entitled to a conveyance when he has complied with the terms of the contract. . . . If the location of a mining claim has the effect of a grant by the United States to the locator, of the right to the present and exclusive possession of the ground located, it follows that there could not be a like grant of the same property to any other person."

The land included within the boundaries of the Pay Streak mining claim having been thus sold and withdrawn from the public mineral lands, by what law or authority is it included in a placer patent and sold again to some other person? If the government issues a patent for lands that have been previously sold or reserved for sale, the patent is so far void. *Steel* v. *Smelting Co.* 106 U. S. 450; *Patterson* v. *Winn*, 11 Wheat. 380; *New Orleans* v. *United States*, 10 Pet. 662; *Reichart* v. *Felps*, 6 Wall. 160; *Best* v. *Polk*, 18 Wall. 112; *Morton* v. *Nebraska*, 21 Wall. 660; *Stoddard* v. *Chambers*, 2 How. 284; *Polk's Lessee* v. *Wendell*, 9 Cranch, 99; *Polk's Lessee* v. *Wendell*, 5 Wheat. 293; *United States* v. *Tichner*, 12 Fed. Rep. 415; *Smelting Co.* v. *Kemp*, 104 U. S. 664; Copp's Mineral Land Laws, 282.

And whether the elder title or grant is "known" to the subsequent claimant is wholly immaterial. A lode claim location being perfected according to law and recorded in the proper county as the law directs, and not abandoned or forfeited in any way, is a title that the locator, or his grantees in good faith, may hold and defend against every other person or claimant by a subsequent acquired title. His right to the ground located

is property which he may dispose of at pleasure. He holds it by virtue of his location, which becomes a contract of sale and purchase between the locator and his grantees and the government. This is his title, the means by which he holds possession and the right of possession to his ground; and, when thus held, the ground cannot be relocated, claimed or taken from him in any way, so long as he complies with the law. A mining claim thus located, owned and held, is "known" to exist, within the meaning of the statute. It is "known" as any other title is, by the record, and better, for the location is so distinctly marked and designated on the ground that its boundaries may be readily traced. The law presumes that such a title is "known" to exist, and whether it is known or not, no other person can acquire any title or interest in the property so located, granted and sold. The government cannot sell to a placer claimant property that it has already sold to a quartz locator as a lode mining claim. And whether the placer claimant "knows" that the government has sold the property to another, is immaterial. The title of the purchaser cannot depend on his knowledge. The purchaser holds by virtue of a grant from the government, and if this grant is evidenced by a perfected location, any other person attempting to obtain title to the same ground is presumed to "know" of the prior grant. A patent to one person for a portion of the mineral lands of the United States already sold by the government to another person is void; and the knowledge of the patentee does not affect the matter one way or another. And so, whether the appellant knew of the existence of the Pay Streak mining claim or not, he could not acquire any title to such mining claim by virtue of his placer patent. The government could not convey to him what it had already sold to the respondents and their grantors.

It is claimed that the reservations in the placer patent

of all quartz leads known to exist therein are void. This patent is not before us; but if it contains these reservations, it shows that the land department did not inquire and adjudicate upon the question as to the existence of lode mining claims within the boundaries of the placer patent. If it had, it would have excepted them from the grant by specific boundaries and by name. But whether the patent makes such exception or not is immaterial. The grant of the placer patent only attaches to such of the public mineral lands as the government had the right to sell, and had not sold or withdrawn from sale before. Lode mining claims are excepted from the placer patent by the statute, and it is impossible for the land department to grant the title to such claims in a placer patent. It is held by all the authorities that the action of the land department in issuing a patent for the public lands, subject to sale by pre-emption or otherwise, when acting within the scope of its authority, is conclusive upon the legal title; but whether the land so conveyed was public land and subject to sale, or, in other words, what is conveyed by the patent, under the statute by which it was issued, may be inquired into even in an action at law. *Iron Silver Mining Co.* v. *Sullivan et al.* 16 Fed. Rep. 829; 108 U. S. 550. "These presumptions as to the conclusiveness of a patent and the title it conveys are confined to matters over which the land department has jurisdiction. It must act within the scope of its authority, and as authorized by law. If it goes beyond its jurisdiction the patent would be so far void; and this may be shown in an action at law." *Silver Bow Mining and M. Co.* v. *Clarke, infra.* "Of course, when we speak of the conclusive presumptions attending a patent for lands, we assume that it was issued in a case where the department had jurisdiction to act and execute it; that is to say, in a case where the lands belonged to the United States and provision had been made by law for their sale. If they never were public property, or

had previouly been disposed of, or if congress had made no provision for their sale, or had reserved them, the department would have no jurisdiction to transfer them, and its attempted conveyance of them would be inoperative and void, no matter with what seeming regularity the forms of law may have been observed. The action of the department would, in that event, be like that of any other special tribunal not having jurisdiction of a case which it assumed to decide. Matters of this kind, disclosing a want of jurisdiction, may be considered by a court of law." *Steele* v. *Smelting Co. supra; Polk's Lessee* v. *Wendell,* 9 Cranch, 99; *Patterson* v. *Winn,* 11 Wheat. 380; *Hoofnagle* v. *Anderson,* 7 Wheat. 212; *Boardman* v. *Lessee of Reed,* 6 Pet. 328; *Bagnell* v. *Broderick,* 13 Pet. 436; *Moore* v. *Robbins,* 96 U. S. 530. These authorities are conclusive upon the proposition that, if the land department undertakes to convey by patent a title to the public lands which have previously been sold by the government, the patent is void, and that this matter may be inquired into even in an action at law; and in a court of equity the inquiry, under proper averments, may take a much wider scope.

This action is not an attack on the placer patent, but is an inquiry as to what was conveyed by the patent under the statute by virtue of which it was issued. Appellant's patent is good so far as it was authorized by law, and respondents do not impeach it or question it to that extent. They seek to show what, under the statute by virtue of which the patent was issued, was conveyed by it. A patent issued in pursuance of law is conclusive upon the legal title, but if issued for lands previously sold or reserved from sale, it has no effect upon the legal title, for the reason that it is not issued in pursuance of law, and is, therefore, void. It was not necessary that the owners of the Pay Streak mining claim should have filed any protest or adverse claim to the placer application of appellant. They did not own or claim any interest in

the placer ground, and the appellant could acquire no interest in their ground by virtue of his placer patent.

It was found by the jury as a fact, and adopted and approved by the court, that the grantors of respondents, in April, 1878, and six months before appellant's application for a patent on the public mineral lands of the United States, discovered a vein or lode of quartz or other rock in place, bearing silver, gold and other valuable deposits, within the boundaries of the ground mentioned in appellant's application, and thereupon made a location of the Pay Streak mining claim, by virtue of, and including, such discovery, by staking the same so that its boundaries could be readily traced, and posting a notice on the claim within the boundaries thereof, and having the same recorded in the proper county, in pursuance of law. It was a perfected lode claim location, and so continued in full force and effect at the time when the appellant applied for and obtained a placer patent for the same ground. The placer patent is void as to the ground included within the boundaries of the lode claim location.

The judgment is affirmed.

*Judgment affirmed.*