[In Bank. — January 26, 1883.]

P. H. NEWBILL ET AL., APPELLANTS, v. J. B. WHITFIELD ET AL., RESPONDENTS.

*63b 81*
*f129 437*

EJECTMENT — MINING CLAIM — FINDINGS — SUFFICIENCY OF THE EVIDENCE. — The action was brought to recover possession of a mining claim, and was tried by the court without a jury. Findings were filed, and a judgment entered thereon in favor of the defendants. The plaintiffs moved for a new trial, which was denied. One of the grounds of the motion was insufficiency in the evidence. *Held,* on a review of the evidence, that it was insufficient to support the findings, and that a new trial should have been granted.

APPEAL from a judgment of the Superior Court of the county of San Bernardino, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*Harris & Allen, Bricknell & White*, and *C. H. Larrabee*, for Appellants.

*Satterwhite & Curtis, Boyer & Gibson, C. W. Rowell*, and *R. E. Bledsoe*, for Respondents.

Ross, J.— The contest on this case is between the claimants of two certain mining claims called, respectively, the Red Jacket and Burning Moscow, situated in Grapevine Mining District, in the Calico Mountains of San Bernardino County. The action is ejectment—plaintiffs claiming the lode in question to be within the lines of the Red Jacket, and the defendants that it is a part of the Burning Moscow.

The fact is not disputed that the plaintiff Newbill discovered the Red Jacket on the 26th day of March, 1881, whatever its lines may be held to be. On that day, in traversing the mountain, he discovered certain veins of rock running in a northwesterly and southeasterly direction, and containing minerals of value, and with the intention of locating a mining claim thereon pursuant to the laws of the United States, and of the local customs and rules of the district, he placed a discovery stake in the ground near the vein, with a written notice signed by him, claiming three hundred feet on each side of the ledge, and running five hundred feet southeasterly and one thousand feet northwesterly along the vein, and stating in the notice that he claimed twenty days within which to mark the boundaries and record his claim—the time claimed being the time allowed by the local rules and custom of the district for that purpose. A few days afterward, and before the 11th day of April, 1881, Newbill again went upon his claim, named it Red Jacket, and commenced to mark its boundaries. For the purposes of our decision we shall assume—what is strenuously denied by the appellants—that the evidence sustains the finding of the court below to the effect that at that time he (Newbill) "erected a stone monument about five hundred feet southeasterly from the discovery stake

and notice aforesaid, with a written notice thereon marked south-eastern end of Red Jacket, and at the same time erected another similar stone monument about three feet northerly from the last named monument, and put a written notice thereon, marked northeast corner of Red Jacket."

Owing to sickness, Newbill was obliged to suspend work, and did not do anything further at that time in locating or marking the boundaries. Continuing sick he agreed with his co-plaintiffs — Wallace, Parks, and Ferrell — that they should go upon the ground and complete the location and marking of the boundaries of the claim, in consideration of which they were to have an undivided half of it. Accordingly, on the 12th of April, 1881, Wallace, Parks, and Ferrell went upon the ground and marked out the boundaries of the Red Jacket claim, not, however, in precise accordance with the discovery notice put up by Newbill on the 26th of March, nor in accordance with the subsequent monuments put up by him, and marked as the southeastern end and the northeastern corner of the Red Jacket, but they marked the boundaries so as to extend about six hundred feet along the vein northwesterly, and about nine hundred feet southeasterly from the discovery stake and notice, with a width of a little less than three hundred feet on each side of the vein, and including the discovery stake and notice. Such boundaries were marked by erecting a rock monument at each corner, and at the middle of each end, and at the middle of the north or northeast side line, and placing written notices on each corner monument marked respectively: Northeast corner Red Jacket, northwest corner Red Jacket, southwest corner Red Jacket, and southeast corner Red Jacket, and on the southeast center end monument was placed a written notice of which the following is a copy: —

"NOTICE OF LOCATION OF QUARTZ CLAIM:

"Notice is hereby given to all whom it may concern, that we, G. B. Wallace, H. C. Parks, P. H. Newbill, J. B. Ferrell, citizens of the United States, over the age of twenty-one years, having discovered a vein or lode of quartz or rock, in place, bearing silver and nickel, within the limits of the claim hereby located, have this day, under and in accordance with the Revised Statutes of the United States, chapter six, title thirty-two, located

fifteen hundred linear feet of this vein or lode, with surface ground six hundred feet in width, situated in Grapevine Mining District, county of San Bernardino, State of California, and known as the Red Jacket Gold and Silver and Nickel Quartz Mining Claim, and extending fifteen hundred feet to monument southeast to center of claim; this is the southeast end of claim; and three hundred feet north, eastern center of Red Cloud, extending northwest fifteen hundred feet to northwest center of Red Jacket from this notice of the discovery or prospect shaft, the exterior boundaries of this claim being distinctly marked by reference to some natural object or permanent monuments, and more particularly described as follows, to wit: Commencing at this notice, and bearing westerly fifteen hundred feet from this notice to a monument on center of claim; thence three hundred feet southwest to north corner of Red Cloud Mine; thence fifteen hundred feet along this line of Red Cloud; thence three hundred feet north to center of claim; thence three hundred (feet) northeasterly to corner; thence fifteen hundred feet northwesterly to monument; thence three hundred (feet) to center of lead; and we intend to hold and work said claim as provided by the local customs and rules of miners, and the mining statutes of the United States.

" Dated on the ground this 26th day of March, 1881.

" Discovered March 26, 1881.

"P. H. Newbill, Locator.

Located April 1, 1881.

"P. H. Newbill.
"G. B. Wallace.
"H. C. Parks.
"J. B. Ferrell."

All of the monuments thus erected by Wallace, Parks, and Ferrell on the 12th of April were, according to the findings of the court below, placed in plain and conspicuous places except the southeast center end monument, on which was placed the notice above copied, which monument, according to the findings, " was not placed in a plain or conspicuous place, but at the bottom of a deep and abrupt declivity or gulch, in an obscure place, where it was not likely to be seen by persons looking for monuments or passing through the country, and it was much smaller than any of the other monuments mentioned." This

finding of the court we think unsupported by the evidence.
Neither the testimony of Wiggins, Ray, nor Parks, cited by
counsel for respondents sustains it.   On the contrary, the testi-
mony of Parks is, that a man going upon the ground to locate
mining claims would have been apt to have seen it without trac-
ing the monuments around.   " He could have found it if he
started to go up the mountain.   It is the only pass by which he
could get up there, and that notice stood right in the pass.   He
couldn't miss the monument," said the witness.   Moreover, we
can conceive of no motive on the part of Wallace, Parks, and
Ferrell, or either of them, for putting the notice in an obscure
place.   The very purpose of posting it was to assert a claim,
not to conceal one.

So, also, the evidence is insufficient to sustain the finding of
the court below to the effect that the two monuments which the
court finds were erected by Newbill prior to April 11, and
marked, respectively, southeastern end of Red Jacket, and
northeast corner of Red Jacket were to the knowledge of Wal-
lace, Ferrell, and Parks standing and allowed to remain at, and
subsequent to the time they marked the boundaries of the Red
Jacket on the 12th of April.   Not only is there no evidence
that they had actual knowledge of such monuments, but it
would seem incredible that they would have left them standing
as indicating the extent of the Red Jacket, when, at the very
same time, they so carefully marked out, and built monuments
on other boundaries of that claim, which extended far beyond
the monuments which it is said they knowingly left standing.

At all events, when the defendants went on the ground on
the 16th and 17th days of July, 1881, they found, or could
have found if they had looked, the monuments — eight in num-
ber — erected by Wallace, Parks, and Ferrell, on the 12th of
April, with the notices above indicated.   Those boundaries
included the premises in controversy.   From them the defend-
ants saw, or ought to have seen, that the ground was appropri-
ated by others, and was not open to location by them.

But it is said for the defendants that they were misled by the
two monuments found by the court to have been erected by
Newbill prior to April 11.   That this was not so is conclusively
shown by the fact that defendants did not *respect those monu-*

*ments;* for they so located their claim as to embrace ground included within them, as well as within the boundaries marked out by Wallace, Ferrell and Parks, on the 12th of April.

Judgment and order reversed, and cause remanded to the court below for a new trial.

MORRISON, C. J., McKINSTRY, J., MYRICK, J., and SHARP-STEIN, J., concurred.