[L. A. No. 819.    Department Two.—August 2, 1900.]

W. S. TALMADGE et al., Appellants, v. A. C. ST. JOHN et al., Respondents.

LOCATION OF MINING CLAIMS—LIBERAL CONSTRUCTION OF PROCEEDINGS.— The proceedings of miners in the location of mining claims are to be regarded with indulgence, and their notices of location are to be liberally construed.

ID.—SUFFICIENCY OF RECORDED NOTICES — REFERENCE TO STATE AND COUNTY—OMISSION.—Where the preliminary notice of location of a mining claim, recorded under the act of 1897, named the county in which the claim was located, and the final certificate of location referred to the posting and record of the preliminary notice, the fact that such certificate omitted to name the state and county of the purported location will not defeat the certificate of location, or the record thereof.

ID.—DESCRIPTION OF CLAIM—BOUNDARIES—REFERENCE TO MONUMENTS— CONSTRUCTION OF STATUTE.—The statute of 1897, requiring that the recorded certificate of location shall contain "a description of the claim, defining the exterior boundaries as marked upon the

ground, and such additional description by reference to some natural object or permanent monument as will identify the claim," is not to be construed as requiring a different reference or identification from that required by the Revised Statutes; and a reference to permanent posts or stone monuments erected on the exterior boundaries is sufficient.

ID.—POSSESSION OF CLAIM BY PRIOR LOCATORS—SUBSEQUENT LOCATION INVALID.—Where the locators of a mining claim under a valid prior location had performed the requisite amount of annual labor thereupon, and were in actual possession of the claim, having a tent thereupon with their bedding and tools in charge of an employee holding possession for them, and their monuments marked upon the ground were plainly visible at the time of entry made by other locators, who made a location upon an alleged discovery of ore taken from the place where the prior locators had been working, such subsequent location can have no validity, though all the statutory requirements of location were complied with by the subsequent locators.

APPEAL from an order of the Superior Court of San Bernardino County granting a new trial. Frank F. Oster, Judge.

The facts are stated in the opinion of the court.

Charles L. Allison, Rolfe & Rolfe, and C. C. Haskell, for Appellants.

The certificate of plaintiffs' location is void, as not complying with the requirements of the act of 1897, in not referring to some additional monument besides the exterior boundaries, in order to identify the claim. (Stats. 1897, sec. 3, p. 215.) The object of the recording act is that the claim may be identified from the description contained in the record. The act must not be interpreted so as to defeat its purpose, by allowing any one of five hundred claims to cover the ground in question. (*Brown v. Levan* (Idaho), 46 Pac. Rep. 661; *Mace v. Gaddis,* 3 Wash. Ter. 125; *Brady v. Husby,* 21 Nev. 453; *Faxon v. Bernard,* 9 Morr. Min. Rep. 515; *Darger v. Le Sieur,* 8 Utah, 160; *McEvoy v. Hyman,* 15 Morr. Min. Rep. 397; *Drummond v. Long,* 9 Colo. 538; *Flavin v. Mattingly,* 8 Mont. 242; *Hammer v. Garfield Min. Co.,* 130 U. S. 290.) There can be no valid possession of a mining claim without a valid location. (*Du Prat v. James,* 65 Cal. 555; *Lockhart v. Wills,* 9 N. Mex. 344; *Horswell v. Ruiz,* 67 Cal. 111; *Belk v. Meagher,* 104 U. S. 284; 1 Morr. Min. Rep. 510, 515.)

Goodrich & McCutchen, and Harris & Garrett, for Respondents.

The certificate of location is to be liberally construed, and the acts of miners in making locations are construed with great liberality. (*Carter v. Bacigalupi*, 83 Cal. 192, 193; *Mt. Diablo Min. etc. Co. v. Callison*, 5 Saw. 447-50; *Bramlett v. Flick*, 23 Mont. 95; *Erhardt v. Boaro*, 113 U. S. 537; *Book v. Justice Min. Co.*, 58 Fed. Rep. 115.) Reference may be made to any permanent post or monument on the ground. (*North Noonday Min. Co. v. Orient Min. Co.*, 6 Saw. 299; 1 Fed. Rep. 522; *Bramlett v. Flick, supra; Credo Min. etc. Co. v. Highland Min. etc. Co.*, 95 Fed. Rep. 911; *Hanson v. Fletcher*, 10 Utah, 266; *Hammer v. Garfield Min. Co.*, 130 U. S. 291.) Plaintiffs had sufficient notice of defendants' possession. (*Donahue v. Meister*, 88 Cal. 130, 131[1]; *Newbill v. Whitfield*, 63 Cal. 85; *Doe v. Waterloo Min. Co.*, 55 Fed. Rep. 11; 70 Fed. Rep. 455.)

HENSHAW, J.—This is an appeal by plaintiffs from an order of the court granting defendants' motion for a new trial. The action was instituted by plaintiffs to recover possession of certain mineral land, for an injunction restraining defendants from extracting ores, and for damages. The following facts were disclosed without conflict in the evidence: On the tenth day of October, 1898, the defendant St. John and others, prospecting for precious metals upon the public domain of the United States, discovered gold bearing rock in place, and, with the purpose of appropriating the same, erected at the point of discovery a prominent and substantial stone monument more than three feet high and more than two feet in diameter at the base, and posted thereon their preliminary location notice claiming fifteen hundred feet in an easterly direction along the course of the lead, and three hundred feet on each side, naming the claim the "Blue and the Gold Mine." In their preliminary notice they gave the date of discovery, the date of the location, and the county in which the claim was located. This notice was properly signed, and on the twenty-sixth day of October, 1898, was recorded in the office of the county recorder of San Bernardino county. About two weeks later they constructed monu-

---

[1] 22 Am. St. Rep. 283.

ments upon the boundaries of the claim, building a monument at each corner and at the center of each end line, placing notices in each monument stating what corner of the claim it marked. The monuments were substantially built of stone and were generally of the size of the one above given. In the discovery monument first constructed they placed their second notice, designated "Certificate of location—quartz claim. Second or completed notice." This last notice gave the name of the claim, the names of the locators, the date of the discovery, and the fact that the notice was posted on the claim on the tenth day of October, 1898, as provided in section 2 of an act of the legislature of the state of California, entitled "An act prescribing the manner of locating claims upon the public domain of the United States, recording notices of location thereof, amending defective locations," etc. (Stats. 1897, p. 215.) This notice was sworn to by defendant A. C. St. John on the twenty-ninth day of November, 1898, and recorded on the same day in the records of San Bernardino county. The locators began their work on the claim on the twenty-seventh day of October, 1898, and worked from that time on continuously until the twenty-first day of January, 1899, when work ceased under an injunction issued by the superior court of San Bernardino county at the instance of these plaintiffs. On November 18, 1898, they had moved on to the claim and were living in a tent near their discovery monument. The value of the work performed by them prior to the issuance of the injunction was about two hundred and fifty dollars. On the twenty-seventh day of December, 1898, the locators were absent, having gone to Los Angeles to spend the holidays with their families. Their tools, tent, and bedding, however, still remained on the claim, and they left one A. H. Jennings, an employee, in charge of it. On that day the plaintiff, W. S. Talmadge, and O. M. Potts went upon the ground and made an asserted discovery of ore in place at the point where the defendants had been at work. They constructed a substantial monument on the dump made of ore which had been extracted by the defendants. They placed in it a preliminary location notice, which was recorded on the thirtieth day of December, 1898, in the records of San Bernardino county. At the time they built their monument and

posted their notice plaintiffs had heard the defendants had done work at the dump upon which their monument was constructed. They saw the tent, and on the morning of the following day they saw Jennings at the tent. They did not look for any monument on the 27th, but on the following day found the east and west end monuments of defendants' claim. Jennings tore down the notice put up by Talmadge on the 27th, and Talmadge replaced it on the morning of the 28th. At the time of their entry Talmadge was armed with a rifle and Potts apparently was carrying a pistol. Between the sixth and thirteenth days of January the plaintiffs did fifty dollars' worth of work within the boundaries of the ground claimed by them, which is substantially the ground covered by defendants' location. They named their claim the Cardinal. When they went upon the ground to do their work St. John, Williams, and Jennings were there and told plaintiffs that they objected to work being done, and stated that they claimed the ground. On the 13th of January Talmadge posted another preliminary notice at the same place where he had posted the notice on the 27th of December, and built a new monument because the earlier monument had been destroyed. At the same time he posted his final notice of location, which notice, sworn to by him, was duly recorded in the records of San Bernardino county. At the time of posting the final notice of location the defendants had constructed monuments upon the Cardinal claim sufficient to define its boundaries so that they could be readily traced.

Defendants moved for a new trial on the ground of the insufficiency of the evidence to justify the decision, that the decision was against law, and for errors of law occurring at the trial. Upon this appeal it appears that defendants were the prior locators, and that the notices of plaintiffs, who were subsequent locators, are unimpeachable in form. Plaintiffs' rights, then, depend primarily upon the question of the sufficiency or insufficiency of the prior notices filed and recorded by defendants, for, if defendants' notices sufficiently comply with the law, their possessory right to the land in question against these plaintiffs may not be disputed. In rendering judgment the trial court seems to have been of opinion that these notices were legally insufficient. A modification of its views in this regard

led to the granting of a new trial, as appears from the fact that this question, and this question alone, is here argued by the parties.

By section 2324 of the Revised Statutes of the United States all records of mining claims hereafter made are required to contain the names of the locators, the date of the location, and such a description of the claim or claims located by reference to some natural object or permanent monument as will identify the claim. By section 3 of the act of the legislature of this state, approved March 27, 1897 (Stats. 1897, p. 15), it is required that the certificate to be recorded shall state: "4. A description of the claim defining the exterior boundaries as they are marked upon the ground, and such additional description by reference to some natural object or permanent monument as will identify the claim." It is urged that the notice recorded by defendants failed in two essential particulars to comply with these laws, and is therefore void. First, that it fails to mention either the state or county of the purported location. The final notice of defendants, as recorded, is irregular in this particular, but herein does not differ from the notice considered by this court in *Carter v. Bacigalupi*, 83 Cal. 187, where it is said: "The notion that, where the part of the vein or lode which is claimed is sufficiently described in the recorded notice, the phrase 'this vein or lode' is not sufficient unless accompanied with the information that the vein or lode in question is within a particular district, county, or state, is one that might arise in the mind of a lawyer, but would not be apt to occur to a miner. . . . . In construing notices like this it must be remembered that, as a rule, miners are unacquainted with legal forms and requirements, and are frequently out of the reach of assistance; and, in view of this, it has been wisely held that their proceedings are to be regarded with indulgence, and liberally construed. In this case we think that the notice was sufficient, both as posted and recorded." Moreover, the final notice in this case makes reference to the preliminary notice posted as required by law and recorded in the records of San Bernardino county, and this preliminary notice named the county in which the claim was located.

The second contention against the validity of defendants' no-

tice is that the description is inadequate, and that the law requires that the notice shall contain not only a description of the exterior boundaries, as marked upon the ground, but also such a description as will, in addition, identify the claim by reference to some natural object or permanent monument. The description in question locates the claim as "commencing at a monument at the center of the west end line, thence running northerly 300 feet to a stone monument at the N. W. corner, thence 1500 feet easterly to a stone monument, being the N. E. corner, thence southerly 300 feet to a stone monument, being the center of the east end line, thence southerly 300 feet to a stone monument, being the S. E. corner, thence westerly 1500 feet to a stone monument, being the S. W. corner, thence northerly 300 feet to the point of beginning." As is said in *Mt. Diablo Min. Co. v. Callison*, 5 Saw. 439: "The object of any notice at all being to guide a subsequent locator and afford him information as to the extent of the claim of the prior locator, whatever does this fairly and reasonably should be held a good notice. Great injustice would follow if years after a miner had located a claim and taken possession and worked upon it in good faith his notice of location were to be subjected to any very nice criticism." In this notice the exterior boundaries are described and the corners of the claim fixed by reference to permanent stone monuments. We do not think that, in the particular matter under consideration, the statute of this state requires more than is exacted by the Revised Statutes of the United States. Both laws demand a description by reference to some natural object or permanent monument such as will identify the claim. Touching this requirement Judge Sawyer, in the North Noonday case (6 Saw. 299), says: "The natural objects or permanent objects here referred to are not required to be on the ground located, although they may be, and the natural object may consist of any fixed natural object, and such permanent monument may consist of a permanent post or stake firmly planted in the ground, or in a shaft sunk in the ground." The stone monuments referred to in this notice were certainly within the interpretation of the statute thus given and universally followed.

Moreover, when the plaintiffs went upon this mining ground

they were confronted with ample evidence touching its occupancy and prior location. The tent, bedding, and tools of the defendants were there; Jennings, an employee, was holding possession for them; the monuments erected by defendants could have been seen, should have been seen, and, in fact, were seen. As was said by this court under a similar state of facts in *Newbill v. Whitfield*, 63 Cal. 81: "At all events, when the defendants went on the ground on the sixteenth and seventeenth days of July, 1881, they found, or could have found if they had looked, the monuments—eight in number—erected by Wallace, Parks, and Ferrell on the 12th of April, with the notices above indicated. Those boundaries included the premises in controversy. From them the defendants saw, or ought to have seen, that the ground was appropriated by others, and was not open to location by them."

The order appealed from is therefore affirmed.

Temple, J., and McFarland, J., concurred.