[Civ. No. 1793. Third Appellate District.—March 29, 1918.]

## AUGUST J. BATT, Respondent, v. FRANCIS M. STEDMAN, Appellant.

MINING LAW—LOCATION OF LODE CLAIM—POSTING OF NOTICE AT POINT OF DISCOVERY.—In the locating of a lode mining claim, the requirements of section 1426 of the Civil Code as to the posting of notice of location at the point of discovery must be complied with.

QUIETING TITLE—OWNERSHIP OF CLAIMS—FINDING.—In an action to quiet title to mining claims, where plaintiff's right of ownership and

possession was in no way dependent upon a prescriptive title, it was sufficient to find that, at the commencement of the action, plaintiff was the owner and entitled to the possession of the claims, and the portion of a finding declaring that plaintiff for more than five years prior to the commencement of the action had been the owner in fee and entitled to the possession, may be disregarded as surplusage.

CONSTRUCTION OF LOCATION NOTICES.—Location notices should be liberally construed, having reference to the circumstances under which, and the character of the parties by which, they are generally made; and in determining the sufficiency of a location notice, the most important guide is the purpose of the notice, which is to identify the land claimed with reasonable certainty.

ID.—IDENTIFICATION OF CLAIM — EVIDENCE — MONUMENTS.—Under section 1426 of the Civil Code, which requires a description of the claim by reference to some natural object or permanent monument as will identify the claim located, testimony of a deputy United States mineral surveyor as to his finding stone monuments on the exterior boundaries of the claim, and the reference in the amended location certificate thereto, sufficiently satisfies the requirements of the code provision.

APPEAL from a judgment of the Superior Court of Butte County. K. S. Mahon, Judge Presiding.

The facts are stated in the opinion of the court.

S. W. Molkenbuhr, for Appellant.

W. H. Carlin, for Respondent.

HART, J.—As respondent states that appellant, in his brief, has substantially stated the case, we adopt appellant's statement, as follows:

"This is an action to quiet title, pursuant to section 2326, Revised Statutes of the United States, [Fed. Stats. Ann., 2d ed., p. 563; U. S. Comp. Stats. 1916, sec. 4623], brought upon adverse claims of respondent on the Samson lode and Annex placer locations to appellant's application for United States patent on the Mammoth lode claim. After trial, without a jury, the court rendered judgment in favor of respondent, awarding to him certain areas in conflict with appellant's claim. Appellant, nevertheless, was awarded (upon his cross-complaint) the possession of a small fraction of the Mammoth location. Appellant moved for a new

trial, which motion was denied. An appeal was thereafter taken from the judgment.

"Respondent's initial and sole location of the Annex placer claim was made January 1, 1909.

"Respondent's first attempted location of the Samson lode claim was made January 1, 1911; an alleged amended location followed on · August 26, 1911. A third location was made, but it was contended during the trial that it was made pursuant to advice and instructions of respondent's counsel; the latter testifying that had he known of the existence of the second location of August 26, 1911, he would not have advised respondent to relocate; that his advice was given because a certificate of the searcher failed to report the second location.

"Appellant located the Mammoth lode claim on July 15, 1912; an amended location, preparatory to application for patent and subsequent to a survey, was made August 27, 1914.

"Respondent Samson's location was claimed to have been made upon a vein running easterly and westerly; appellant's location was upon a vein having a northerly and southerly course.

"Upon motion for a new trial, appellant urged, and upon this appeal urges, that the judgment be reversed because certain indispensable findings in favor of respondent are not supported by the evidence."

1. Appellant contends that finding No. 1 is not supported by the evidence. Said finding is: "At the date of the commencement of this action plaintiff was, and for more than five years prior and up to said date had been, ever since has been, and now is, the owner in fee, in the actual possession and entitled to the possession of" two parcels of land, described by metes and bounds.

Appellant makes the point that the location notice of the Samson lode claim was not posted at the point of discovery, as required by section 1426 of the Civil Code. The claim is that the evidence shows it to have been posted at a point seventy-five feet from the discovery.

There can be no question that the requirement of the code must be complied with. Said section 1426 is almost identical in language with section 3610 of the Political Code of Montana, under which latter section it has been held that

the posting of a notice of location sixty feet from the point of discovery did not comply with the provisions of the section. (*Butte Northern Copper Co.* v. *Radmilovich,* 39 Mont. 157, [101 Pac. 1078].)

Appellant calls attention to the following testimony of the plaintiff: "Mr. Carlin: Q. You made a discovery of gold on the lode? A. Yes, sir. After I made that discovery I filed on the claim. I posted the notice. Q. Where? A. On the lode. The Court: Where, with relation to the point of discovery? A. Within probably seventy-five feet of the point of discovery." Immediately following said testimony is this question and answer: "Mr. Carlin: Tell the court how you posted that notice and what you did in posting it. A. In the first place, I dumped out some rock and found there was gold in it, and I went on and made out the papers and put up a post; nailed a box on it; put the notice in it and put it on the lode and surrounded it by a monument of rock right where the quartz shows—where the lode shows."

It is quite evident that the trial court must have considered the witness' statement that he posted the notice "within probably seventy-five feet of the point of discovery" as a slip of the tongue or, perhaps, made through a misapprehension of the question asked him, and that the finding was based on the last answer above quoted which showed there had been a compliance with the requirements of the section as to posting. Therefore, the rule that the legal right to possession of mining claims can only come from a valid location (*Horswell* v. *Ruiz et al.,* 67 Cal. 111, [7 Pac. 197]), is satisfied in this case.

That portion of said finding No. 1 which declares that plaintiff, "for more than five years prior" to the commencement of the action, had been the owner in fee and entitled to the possession of the Samson lode claim, is criticised as being erroneous for the reason that respondent's first location was made on January 1, 1911, and the complaint was filed December 23, 1914, a period of less than four years.

As seen, the finding described two parcels of land by metes and bounds. It is conceded that the description of one of these parcels covered the Samson claim and the other the Annex. The Annex claim having been located January 1, 1909, the finding, so far as that parcel was concerned, was true, more than five years having elapsed between the date

of the location and the filing of the complaint, while it would seem that it was not true as to the Samson claim. As stated by appellant, the action is brought upon adverse claims by respondent to appellant's application for patent. Plaintiff's right of ownership and possession is in no way dependent upon a prescriptive title, and the words, "for more than five years prior," in the finding, so far as referring to the Samson claim, may be disregarded as surplusage. (*Doherty* v. *California Nav. etc. Co.*, 6 Cal. App. 131, [91 Pac. 419]; *Risdon* v. *Steyner*, 9 Cal. App. 344, [99 Pac. 377].) It was sufficient to find that, at the commencement of the action, plaintiff was the owner and entitled to the possession of said mining claims.

It is next contended that the Samson lode location was not distinctly marked on the ground.

The plaintiff testified as follows: "I stepped from the point where I put the [location] notice three hundred feet in a southerly direction, crosswise from the lode. . . . Q. What did you place when you went over the three hundred feet? A. Put a monument there of 4x4, about three feet high, between three and four feet, and placed it there and surrounded it by rocks. From this monument I went in an easterly direction 750 feet and also put there a 4x4 and placed a rock around it—a similar monument. Then I went three hundred feet in a northerly direction and placed another monument there. That brought me about in the center line of the claim on the lode. Then I went three hundred feet in a northerly direction and placed another similar monument there, just the same. Then I went 750 feet easterly and I placed a similar monument there. Then I went on 750 feet more and I placed another similar monument. The monuments were all similar, except as to markings. Then I went in a southerly direction three hundred feet and placed a similar monument there. That took me to about the center of the lode. Then I went three hundred feet more, southerly, and placed another monument. Then I went 750 feet in an eastern direction to the point of beginning, you might call it, on the side line. There were markings on the monuments or stakes, which said the 'Samson Mining Claim,' and gave the description of the corners. For instance, the northeast corner was marked 'NE.' and so on. I don't think I marked the stake in the center on the south

side line.   Q. When you got through there, state how your
claim was marked on the ground.   A. So anyone could see
it.   Plain.''                     .                            . "

The above description is meaningless, considered as the
description of a lode mining claim.   The first stake south of
the discovery and the last one named would be three thou-
sand feet apart, and the lines would not entirely inclose any
land.   But it will be observed that if the word ''easterly,''
which we have underscored in the above description, were
to be read ''westerly,'' a parallelogram would be described
having the prescribed dimensions of a lode mining claim, to
wit, one thousand five hundred feet in length and six hun-
dred feet in width.   That the claim was in fact so marked
would appear from the testimony of R. A. Grass, who signed
as a witness the notice of location of the Samson claim made
on January 1, 1911.   He testified: ''I was there when Batt
put up the stakes.   We put up the notice and then Mr. Batt
put up the corners and the side stakes.   The notice was put
up about the center of the claim, east and west.   I ascer-
tained the existence of the lode that was there; it ran east
and west.   It may vary a few degrees; it may be a little
north of west.   There was an outcrop in the ground which
you could follow.   The claim was located on that lode and
three hundred feet on each side thereof.   The claim was
one thousand five hundred feet in length.   The corners and
sides were marked with stakes.   Mr. Batt and his son put
the stakes up and I went to see.   He told me to see whether
those stakes were up—they were all up, the corners or end
and side line stakes; they might not have been in a straight
line because we did not have any surveying instruments.
There were stone monuments around all of the stakes.   After
we got through marking the claim, there was nothing to pre-
vent any person going on there and seeing the boundaries
of the claim.   It was in plain sight, anyone could see the
monuments.''

In the amended location certificate, dated August 26, 1911,
the boundaries of the Samson claim are described as follows:
''Beginning at a monument of stones placed on center of
said ledge or lode thence three hundred feet southerly to
monument of stones placed on south boundary line, thence
westerly 750 feet to a monument of stones placed on south-
west corner, thence northerly six hundred feet to a monu-

ment of stones placed on the northwest corner, thence easterly one thousand five hundred feet and parallel with said vein to a monument of stones placed on the northeast corner, thence southerly six hundred feet to a monument of stones placed on the southeasterly corner, thence westerly 750 feet to monument of stones and place of beginning.''

J. C. Reaves, a deputy United States mineral surveyor, testified that he surveyed the Samson and Annex claims in November, 1914; that he had with him a copy of the amended location certificate of the Samson lode and that Mr. Batt pointed out to him location stakes and monuments. At the northwest corner he found a 4x4 pine post in a mound of stone; the post was marked ''Samson NWcor.'' At the southwest corner he found a 4x4 post in a mound of stone. At a point on the south side line he found a mound of stone but no stake, and he also found a stake in a mound of stone at the east end of the lode line. A post was standing with the remains of a box ''in which the location notice was said to have been posted; that post and the box on it faced an outcrop of quartz near a tunnel.'' The witness said he found no evidence on the southeast corner, on the southwest corner or on the corner on the north side line, and he stated that ''the southeast corner fell in the burned portion of Forbestown, that had burned probably since the posts were set.'' The witness described the courses and distances he ran, which differed in more or less degree from the calls in the amended location certificate and from the claim as delineated by the remaining monuments. We are not inclined to detail his testimony at length.

''Location notices should be liberally construed, having reference to the circumstances under which, and the character of the parties by which, they are generally made; and in determining the sufficiency of a location notice, the most important guide is the purpose of the notice, which is to identify the land claimed with reasonable certainty.'' (Green v. *Gavin,* 10 Cal. App. 330, [101 Pac. 941].) In *Talmadge* v. *St. John,* 129 Cal. 430, [62 Pac. 79], it is held that ''the proceedings of miners in the location of mining claims are to be regarded with indulgence, and their notices of location are to be liberally construed.'' It is true that the surveyor drew in some of the lines as they were marked on the ground in order to bring the boundaries of the claim within the

limits prescribed by law. In Lindley on Mines, section 396, citing *Doe* v. *Sanger*, 83 Cal. 203, [23 Pac. 365], it is said: "For the purpose of obtaining parallelism, or casting off excess, the lines may be drawn in." We hold that, while the markings on the ground were not exactly where they should be, they were sufficient, taken with the amended location certificate, "to identify the land claimed with reasonable certainty."

Section 1426 of the Civil Code requires "a description of the claim by reference to some natural object, or permanent monument, as will identify the claim located." It is the contention of appellant that the Samson location certificates do not show a compliance with that requirement. It is held in *Talmadge* v. *St. John, supra,* that "a reference to permanent posts or stone monuments erected on the exterior boundaries is sufficient." The testimony of the witness, Reaves, as to his finding stone monuments on the exterior boundaries of the claim, and the reference in the amended location certificate thereto, satisfy the requirement of the code section in this respect.

Appellant contends that a map made by the surveyor and appearing in the transcript, which purports to show the area in conflict between the locations of plaintiff and defendant, is without support in the evidence. As we have seen, the surveyor testified that he found four fixed monuments, on certain corners and one side line of the claim, and with one boundary line fixed the remaining three could easily be established. The witness testified: "I established no point; I simply extended the original, the mound pointed out to me by Mr. Batt, being the locator, and pointed out to me that he located to be the original location monument. In surveying, I considered both the data on the ground, as well as that given in the notice of location." We think the correctness of the map is sufficiently established by the evidence.

As to the contention of appellant that the location as established by the surveyor is excessive, it appears from the map that the claim does not form a perfect parallelogram. From the northwest and the southwest corners the respective lines run to the north and south center side stakes on a course S. 42° 08′ E., and from the latter points to the northeast and southeast corners on a course S. 68° 28′ E. As a consequence of the angles thus shown, the west end line is 627

feet and the east end line is 608 feet in length. But the surveyor testified that the distance "would be six hundred feet at right angles." So as to the distance from the point of location to the original mound in the center of the south side line, which appellant asserts exceeds 370 feet. We have the testimony of the surveyor that he surveyed a claim six hundred by one thousand five hundred feet.

We cannot hold with appellant in his claim that the Annex placer location is void because respondent failed to show that the land was valuable for placer mining. In *Garibaldi* v. *Grillo,* 17 Cal. App. 540, [120 Pac. 425], we held: "Where minerals have been found, and the evidence is of such a character that a person of ordinary prudence would be justified in the further expenditure of his labor and means, with a reasonable prospect of success in developing a valuable mine, the requirements of the statute have been met." Plaintiff testified that when he located the placer claim on January 1, 1909, he made a discovery of gold therein; that he panned and found there was some gold on the claim; that he has mined the claim more or less every year —"placer mining, washing the earth." He stated that he had kept no record of how much gold he had taken out; that he mined with water, using sluice-boxes and ground-sluices. He has done the assessment work each year since locating the claim. Under these circumstances it must be held that the land was valuable for placer mining.

Other points made by appellant we do not consider necessary particularly to notice. This seems to be a case where a miner, in good faith, located mining claims on unoccupied public domain of the United States. At the time of the commencement of the action he had been in possession of one claim for almost six years and of the other for nearly four years. The annual assessment work had been done by him on both claims. Gold had been found in both, and a tunnel 212 feet in length had been run on the lode claim.

We think the judgment should be affirmed, and it is so ordered.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 27, 1918.