[L. A. No. 2189. Department One.—March 4, 1909.]

## J. W. JAMESON et al., Appellants, v. MARY J. JAMES et al., Respondents.

PUBLIC LANDS—JUDICIAL POWERS OF LAND DEPARTMENT.—Under the legislation prescribed by the United States Statutes providing for the grant by the government of its public lands, the land department has been constituted a special tribunal vested with judicial power to determine the claims of all parties to the public lands which it is authorized to dispose of, and with power to execute its judgments by conveyances to the parties entitled to them.

ID.—JURISDICTION OF LAND DEPARTMENT—CHARACTER OF LAND—ADJUDICATION INVOLVED IN ISSUANCE OF PATENT.—If the land department has jurisdiction, that is, if the land belongs to the United States, and provision has been made by law for its sale, the issuance of a patent is an adjudication that the grantee of the government has performed the acts necessary to entitle him to receive the patent. And, where the power of the land department depends upon its finding that the land is of a certain character, the issuance of the patent is an adjudication that the land is of the character required.

ID.—EQUITABLE RELIEF AGAINST PATENT.—Such adjudications in favor of the patentee have the same force as any adjudication by a tribunal having jurisdiction. They are binding as against collateral attack, but equity may give relief against the enforcement of rights claimed under a patent fraudulently obtained.

ID.—PROCEEDINGS AUTHORIZED FOR ATTACK ON PATENT—PATENTEE HELD AS TRUSTEE—SUIT FOR CANCELLATION—PARTIES PLAINTIFF.—Proceedings based upon fraud in procuring the issuance of a patent have been of two classes: 1. The bill may, while recognizing the validity of a patent as a conveyance of the legal title, seek to have the patentee declared a trustee of such title for the benefit of the complainant. Such relief may be granted only where the fraud complained of operated to prevent the complainant from establishing, in the proceedings before the officers of the land department, his own right to a patent; or, 2. There may be a suit in which the relief sought is a cancellation of the patent itself. A suit of the latter kind can be maintained by the United States alone.

ID.—HOMESTEAD ENTRY—WITHDRAWAL OF LAND FROM SALE.—So long as a homestead entry on public lands of the United States, valid on its face, remains uncontested and uncanceled, the land is withdrawn from the public domain and cannot be granted by the United States to a subsequent claimant.

ID.—MINERAL LOCATION—AGRICULTURAL PATENT—SUIT TO CANCEL CANNOT BE MAINTAINED BY LOCATOR.—One claiming under a mineral location of public lands of the United States, which is subsequently

patented to a homestead claimant as agricultural lands in pursuance of an entry antedating the mineral location, cannot maintain
an action in his own name for the cancellation of the patent for
any fraud of the patentee in procuring the issuance of the patent.

APPEAL from a judgment of the Superior Court of Kern
County. Paul W. Bennett, Judge.

The facts are stated in the opinion of the court.

J. S. Chapman, and Fred E. Borton, for Appellants.

H. L. Packard, J. R. Scott, and W. W. Kaye, for Respondents.

SLOSS, J.—The demurrer of the defendant John P. Cuddeback, to plaintiffs' amended complaint having been sustained, and plaintiffs having failed to further amend within
the time allowed by the court, judgment of dismissal was
entered. The plaintiffs appeal from the judgment.

The amended complaint alleges that on March 31, 1899, the
plaintiffs made a mineral location of forty acres of land in
Kern County. The land contained limestone in large quantities, and was far more valuable for said limestone than for
any other purpose. Immediately after said location the
plaintiffs entered into possession of the claim, and did, in
each of the years 1900 and 1901, perform labor thereon and
expend money in the improvement thereof, to an amount in
excess of the sum required by law. Plaintiffs entered upon
said claim in the year 1902 for the purpose of performing the
labor and making the improvements required by law, but the
defendants forbade and prevented said plaintiffs from performing any labor or making any improvements upon the
property.

Prior to May 20, 1901, the defendant Mary J. James had
made an application to the United States to enter a quarter
section of land including the plaintiffs' location, and on April
13, 1900, she made application to the register and receiver of
the United States land-office at Independence to make final
proof and payment for said land and to procure a patent
therefor. Notice of the applicant's intention to make final
proof and of the time when proof would be filed in support

of her homestead entry was published by the register in a
paper published at Kern City, more than fifty miles distant
from the land, there being at the time a newspaper published
at Mojave, Kern County, within seventeen miles of the place
where the land was situated. Plaintiffs had no notice of the
application of Mary J. James to enter the land or to make
final proof until after hearing had been had and patent
issued. It is alleged that said Mary J. James appeared and
made proof under her homestead entry and that patent was
issued to her by the United States of date October 23, 1901.
At the time that said proof was made Mary J. James knew
that the land contained limestone in large quantities, that
said land was more valuable for the limestone than for any
other purpose, that said land was claimed by plaintiffs under
their location, and that limestone had been developed thereon
under said claim. Notwithstanding these facts said Mary J.
James, through herself and her witnesses, misrepresented to
the officers of the land department the true character and
condition of the land and fraudulently concealed the fact that
said land was valuable for limestone and the fact that a' min-
ing location had been made on said land. These misrepre-
sentations and concealments were fraudulently made for the
purpose of obtaining the title to said land and a patent
therefor as agricultural land, under the homestead laws of the
United States. Plaintiffs allege that when Mary J. James
made her original application and entry many years before
the final proof, she was not residing on the premises, nor did
she ever reside thereon, erect any improvements thereon,
except a cabin of the value of twenty-five dollars, or cultivate
or improve the land. At the time of making her final proof,
however, she testified and represented to the register and
receiver that she had resided upon the land and cultivated and
improved the same as by the homestead laws required, and
the officers of the land department believed and acted upon
her testimony and representations, and the patent was issued
upon the faith of said representations. It is further averred
that the homestead entry was not made by Mary J. James for
her own benefit, but for the benefit of John W. Payne, to
whom she conveyed on the day following the making of final
proof. The complaint sets forth various conveyances by
Payne and by his grantees (all of whom are named as defend-

ants), but alleges that every defendant accepting a conveyance from Mary J. James or her successors took with knowledge of the fraud perpetrated by her. The prayer of the complaint is that the patent be canceled and that it be adjudged and decreed that the defendants have no right, title, or interest in the land located by plaintiffs.

The demurrer is based upon various grounds, but we shall consider only the specification that the facts alleged do not constitute a cause of action.

Under the showing made by the complaint the defendant Mary J. James did not bring herself within the provisions of the homestead law and was not, in reality, entitled to a patent. By reason of the mineral character of the land it was not open to entry (U. S. Rev. Stats. sec. 2302, [U. S. Comp. Stats. 1901, p. 1410]) and the conditions of the statutes regarding residence, cultivation, and entry for the benefit of the claimant (U. S. Rev. Stats. secs. 2289-2291, [U. S. Comp. Stats. 1901, pp. 1388-1394]) had not been complied with. These facts, if brought to the attention of the proper officers in the proper way, would have afforded good ground for denying her application. But under the legislation providing for the grant by the government of its public lands, the land department has been constituted a special tribunal, "vested with judicial power to determine the claims of all parties to the public lands which it is authorized to dispose of, and with power to execute its judgments by conveyances to the parties entitled to them." (*King* v. *McAndrews*, 111 Fed. 860, [50 C. C. A. 29].) If the department has jurisdiction, that is, if the land belongs to the United States, and provision has been made by law for its sale, the issuance of a patent is an adjudication that the grantee of the government has performed the acts necessary to entitle him to receive the patent. And, where the power of the land department depends upon its finding that the land is of a certain character, the issuance of the patent is an adjudication that the land is of the character required. (*Steel* v. *St. Louis Smelting Co.*, 106 U. S. 447, [1 Sup. Ct. 389] ; *Johnson* v. *Towsley*, 13 Wall. 72; *Gale* v. *Best*, 78 Cal. 235, [12 Am. St. Rep. 44, 20 Pac. 550].) These adjudications in favor of the patentee have the same force as any adjudication by a tribunal having jurisdiction. They are binding as against col-

lateral attack (see cases above cited), but equity may give relief against the enforcement of rights claimed under a patent fraudulently obtained. Proceedings based upon fraud in procuring the issuance of a patent have been of two classes. The bill may, while recognizing the validity of a patent as a conveyance of the legal title, seek to have the patentee declared a trustee of such title for the benefit of the complainant. Or there may be a suit in which the relief sought is a cancellation of the patent itself.

In the case at bar the plaintiffs do not seek to have the defendants held as trustees of the legal title conveyed by the patent. "The purpose of the suit," as the appellants themselves declare in their brief, is "to cancel the patent . . . and for a judgment that the defendants have no title under or through the patent which was issued." And, on the facts alleged, it would seem clear that there is no foundation for a decree declaring that the title passing to the patentee is held by her and her grantees in trust for the plaintiffs. Such relief may be granted only where the fraud complained of operated to prevent the complainant from establishing, in the proceedings before the officers of the land department, his own right to a patent. (*Bohall* v. *Dilla,* 114 U. S. 47, [5 Sup. Ct. 782]; *Sparks* v. *Pierce,* 115 U. S. 408, [6 Sup. Ct. 102]; *Lee* v. *Johnson,* 116 U. S. 48, [6 Sup. Ct. 249]; *Carter* v. *Thomson,* 65 Fed. 329; *Plummer* v. *Brown,* 70 Cal. 544, [12 Pac. 464]; *Buckley* v. *Howe,* 86 Cal. 596, [25 Pac. 132]; *Gage* v. *Gunther,* 136 Cal. 338, [89 Am. St. Rep. 141, 68 Pac. 710].) It is not claimed by appellants that they, to quote the language of this court in *Plummer* v. *Brown,* occupied "such a *status* as entitled them to control the legal title." They had never performed the acts necessary to vest in them the right to a patent. Furthermore, the original homestead entry of Mrs. James must have been made at least five years before the final proof (U. S. Rev. Stats. sec. 2291, [U. S. Comp. Stats. 1901, p. 1394]), and therefore antedated the location upon which plaintiffs rely. So long as the homestead entry, valid on its face, remained uncontested and uncanceled, the land was withdrawn from the public domain and could not be granted by the United States to a subsequent claimant. (*Witherspoon* v. *Duncan,* 4 Wall. 210; *Hastings etc. R. R. Co.* v. *Whitney,* 132 U. S. 357, [10 Sup. Ct. 112]; *Hodges* v.

*Colcord*, 193 U. S. 192, [24 Sup. Ct. 133] ; *Thompson* v. *Basler*, 148 Cal. 646, [113 Am. St. Rep. 321, 84 Pac. 161].)

The plaintiffs then, not being themselves entitled to acquire title to the land, ask that the patent conveying it to defendant James be canceled. That a patent obtained by fraud may be so canceled is well settled. But, inasmuch as the party injured by the fraud is the government, whose title has been improperly obtained, the action to annul the patent can be maintained by the United States alone. A complainant in the position of these plaintiffs must, as is said in *Steel* v. *St. Louis Smelting Co.*, 106 U. S. 447, [1 Sup. Ct. 389], "apply to the officers of the government to take steps in its name to vacate the patent or limit its operation. . . . This can be accomplished only by regular judicial proceedings taken in the name of the government for that special purpose." (See, also, *Lee* v. *Johnson*, 116 U. S. 48, [6 Sup. Ct. 249] ; *In re Emblen*, 161 U. S. 52, [16 Sup. Ct. 487] ; *Emblen* v. *Lincoln Land Co.*, 184 U. S. 660, [22 Sup. Ct. 523] ; *Carter* v. *Thomson*, 65 Fed. 329.)

For these reasons the amended complaint failed to show a case entitling the plaintiffs to any relief whatever.

The judgment is affirmed.

Shaw, J., and Angellotti, J., concurred.