[L. A. No. 4530.  Department One.—December 7, 1918.]

# W. W. WATTERSON et al., Respondents, v. W. D. CRUSE, Appellant.

APPEAL—ORDER DENYING A NEW TRIAL—EFFECT OF CODE AMENDMENT OF 1915.—An order denying a new trial made after the amendment of 1915 to section 963 of the Code of Civil Procedure is not an appealable order.

MINING LAW — ABANDONMENT OR FORFEITURE OF CLAIM — TERMINATION OF RIGHT TO ASSOCIATED MILL SITE.—Where the locator of a mill site used in connection with a lode mining claim ceases by reason of abandonment or forfeiture to be the proprietor of the vein or lode, the right to the associated mill site is also ended, and the claim together with the connecting mill site is open to relocation.

ID.—REMOVAL OF IMPROVEMENTS — RIGHT OF ORIGINAL LOCATOR.—Improvements placed upon mining land by the original locator, if they fall within the class designated as fixtures, become a part of the realty, and the subsequent appropriation of the land carries with it, necessarily, whatever may be affixed to it, and while prior to the determination of his estate by the perfection of a relocation the prior locator may sever and remove all machinery, buildings, and other improvements which, by the manner of their attachment to the

soil, have become a part of the freehold, his right of entry for that purpose ceases when his estate is terminated.

ID.—STATUS OF LOCATOR OF CLAIM.—A locator of a mining claim is not a mere licensee, but owns an estate, in the claim which possesses all 'the attributes of a title in fee, subject to the paramount fee in the government, although his rights are subject to forfeiture for failure to do the required work, followed by a relocation.

APPEAL from a judgment of the Superior Court of Inyo County. Wm. D. Dehy, Judge. Reversed.

The facts are stated in the opinion of the court.

L. C. Hall, for Appellant.

A. H. Swallow, for Respondents.

SLOSS, J.—On July 2, 1912, Southern Belle Mines Company, a corporation, was the owner and in possession of three mill sites which had been located and used in connection with certain lode mining claims theretofore located by said mining company. On the mill sites there had been erected a quartz-mill, a dwelling-house, and a boarding-house. A barn and office building stood on one of the mining claims. On said day the corporation sold the quartz-mill and the other buildings to the plaintiffs, with the right to remove the structures in the future. During the year 1913 the Mines Company performed no labor and made no improvements upon said mining claims or mill sites. On January 1, 1914, the defendant and one Sproul (whose interest was subsequently transferred to defendant) made discovery of a mineral-bearing lode, and located thereon a lode mining claim. On March 31, 1914, defendant made a similar discovery and location of a second claim. Everything necessary to constitute a valid mining location was done in each instance. The boundaries of the claims thus located included the ground occupied by the mill and other buildings above mentioned. In May, 1914, the defendant commenced to remove some of the buildings, whereupon plaintiffs brought this action, seeking an injunction to restrain the defendant from so doing, or from preventing the plaintiffs from removing the structures. The court gave judgment, declaring the plaintiffs to be the owners of the improvements, and allowing them to

remove the same within two months. The decree also enjoined any interference with such removal during the two months' period.

The defendant appeals from the judgment. His attempted appeal from the order denying a new trial is nugatory, the order having been made after the amendment of 1915 to section 963 of the Code of Civil Procedure. (*Gray* v. *Cotton,* 174 Cal. 256, [162 Pac. 1019].)

There is no controversy over the facts, which are here stated as they were found by the court. The only question is whether the ownership and right of possession of the buildings was in the plaintiffs or the defendant. These buildings stood in part upon mining claims and in part upon mill sites. No legal distinction can be drawn in this regard, the case being the same as if it involved improvements upon mining claims alone. Under the mining law mill sites may be located either in connection with the ownership of a vein or lode or independently of the ownership of a mine by the owner of a quartz-mill or reduction works. (U. S. Rev. Stats., sec. 2337, [U. S. Comp. Stats. 1916, sec. 4645; 6 Fed. Stats. Ann., 2d ed., p. 589].) The findings in this case expressly declare that the mill sites in question were located and used in connection with lode mining claims owned by the Mines Company, "and not otherwise." The company's right was, therefore, founded upon the first provision of section 2337, the one permitting the location of a mill site as an adjunct to a lode claim. Where the locator of such a site ceases, by reason of abandonment or forfeiture, to be the proprietor of the vein or lode, the right to the associated mill site is also ended. (2 Lindley on Mines, 3d ed., sec. 564.)

By the failure of the Mines Company to perform labor or make improvements during 1913, its mining locations (and the connecting mill sites) became open to relocation (U. S. Rev. Stats., sec. 2334, [U. S. Comp. Stats. 1916, sec. 4642; 6 Fed. Stats. Ann., 2d ed., p. 585]), and upon a valid location by others, the right of the original locator to the occupancy and use of the land embraced within the boundaries of the new locations was forfeited. Thereupon the relocator was clothed with "the exclusive right of possession and enjoyment of all the surface included within the lines of the location." (U. S. Rev. Stats., sec. 2322, [U. S. Comp. Stats. 1916, sec. 4618; 6 Fed. Stats. Ann., 2d ed., p. 523].) This carried with it

the right of possessing and enjoying everything which had been so affixed to the land as to become a part of it. Mr. Lindley states the rule thus:

"Such improvements or betterments as have been placed upon the property by the original locator, if they fall within the class designated as fixtures, become a part of the realty, and the subsequent appropriation of the land carries with it, necessarily, whatever may be affixed to it. Prior to the determination of his estate by the perfection óf. a relocation, it cannot be doubted that the prior locator may sever and remove all machinery, buildings, and other improvements which, by the manner of their attachment to the soil, have become a part of the freehold. But his right of entry for that purpose ceases when his estate is terminated." (2 Lindley on Mines, 3d ed., sec. 409.)

Notwithstanding the respondents' vigorous attack upon this passage, we are satisfied that it is a correct statement of the law.

That the structures here involved constituted fixtures, as that term is defined in our code (Civ. Code, secs. 660, 661), is conceded. This does not finally determine which of the contending parties is entitled to them. While things affixed to the soil ordinarily belong to the owner of the soil, there may be a right of removal arising from the agreement of the parties or their relation. (Civ. Code, secs. 1013, 1019.) Thus, he who has affixed improvements to land under a license from the owner is generally held to have a right to remove them within a reasonable time after the termination of the license. (Bronson on Fixtures, sec. 106; 19 Cyc. 1056.) An agreement for such right of removal is implied from the circumstances. The respondents seek to apply this rule to the case at bar. But there is no real analogy between the status of the locator of a mining claim and that of a mere licensee. While the paramount fee remains in the government until it has issued its patent, yet as to everyone else "the estate acquired by a perfected mining location possesses all the attributes of a title in fee, and so long as the requirements of the law with reference to continued development are satisfied, the character of the tenure remains that of a fee." (2 Lindley on Mines, 3d ed., sec. 539; *Merritt* v. *Judd,* 14 Cal. 59; *Hughes* v. *Devlin,* 23 Cal. 501; *Buchner* v. *Malloy,* 155 Cal. 253, [100 Pac. 687].) The interest of the locator is treated

as a vested estate. (*Hughes* v. *Devlin, supra; Clipper M. Co.* v. *Eli M. Co.,* 194 U. S. 220, [48 L. Ed. 944, 24 Sup. Ct. Rep. 632, see also, Rose's U. S. Notes].) It is true that the right may be forfeited by failure to do the required work, followed by a relocation. But such forfeiture is in no way similar to the revocation of a license. It may much more aptly be compared to the termination of the right of a vendee or option-holder for failure to comply with the covenants or conditions upon which his right of possession and purchase depend. In such case the fixtures belong to the vendor, and the defaulting vendee or option-holder has no right to remove them. (*Pomeroy* v. *Bell,* 118 Cal. 635, [50 Pac. 683]; *Hemenway* v. *Cutler,* 51 Me. 407; *Westgate* v. *Wixon,* 128 Mass. 304; 10 Cyc. 1061.) In *Pomeroy* v. *Bell, supra,* the court explains the rule, saying, in effect, that no agreement for removal can be implied where fixtures are annexed by a vendee, because such vendee, unlike a tenant, makes the improvements in contemplation of becoming the owner of the land. So here. At the time the Southern Belle Mines Company attached the improvements to the land, it was vested with the right to hold the land so long as it did the annual work required, and thereafter until a valid location was made by another. The loss of its right resulted from its own failure to meet the conditions which, as it knew, were imposed by the law. It placed the improvements upon land in which it had an interest, and in which, presumably, it expected to acquire an estate in fee. These circumstances preclude the inference of any agreement that it should be allowed to sever and remove the buildings after its rights in the land had terminated.

When the defendant made the locations under which he claims, the interest of the former locator came to an end. By his locations, the defendant acquired the exclusive right of possession and enjoyment of the land, and this necessarily included everything that was a part of the land. The plaintiffs could not, of course, by their purchase from the Mines Company, acquire any better title than their grantor had.

There was, therefore, no foundation for the decree giving to the plaintiffs a right of removal of the fixtures, or for the adjudication that the plaintiffs were the owners thereof. Upon the facts found, the plaintiffs were not entitled to any relief.

The judgment is reversed, with directions to enter judgment in favor of the defendant.

Victor E. Shaw, J., *pro tem.*, and Richards, J., *pro tem.*, concurred.