[Civ. No. 4440. Third Appellate District.—March 10, 1932.]

ROSALIE M. BROWN et al., Appellants, v. WM. H. LUDDY et al., Respondents.

James H. Boyer for Appellants.

Joseph H. Huberty for Respondents.

COMSTOCK, J., *pro tem.*—Plaintiffs brought this action to quiet title to a quartz mining claim known as the "Never Sweat Quartz Mine" in Calaveras County. Defendants answered and also filed a cross-complaint to quiet title to certain lands patented to the defendant Luddy by the United States government as a stock-raising homestead.

The mining claim was located on the public domain in 1896 by plaintiffs' predecessors in interest. All requirements of the law in respect to the location of quartz mining claims were fulfilled and the annual assessment work has all been performed. No patent has been issued to plaintiffs. In 1922, the defendant Luddy made application for a stock-raising homestead, and thereafter, on the twelfth day of January, 1927, a patent to said homestead was issued to him by the United States. Plaintiffs had no actual knowledge of said defendant's application and no contest was made on the issuance of the patent. The mining claim is of the usual dimensions, 600x1500 feet. The patent to Luddy describes a tract of land 481.97 acres in extent and overlaps the mining claim on 1.96 acres of the southerly end thereof. In the course of the development of the claim several cuts have been made near the point of discovery about the center thereof and a tunnel has been driven into the ground about 300 feet in length. The ore and waste material have been removed from the portal of this tunnel, which is located about 325 feet northerly of the north boundary of the patented homestead, and much of it has been taken across the main county road running through the claim near its southerly end and dumped on the southerly side thereof. Defendant Luddy has known at all times since 1897 of the existence of the tunnel and has noticed the dirt and rock being dumped below the road during much of that time. He was road-master on that road for a number of years under his father, who was a supervisor of Calaveras County, and was very familiar with the locality. He did not at the time he made his affidavit and proof for the purpose of securing his patent actually know where the boundary lines of the Never Sweat Claim were nor had he ever made any effort to locate or ascertain where they lay.

The only interest of the defendant Raggio is as a purchaser from Luddy under a partially performed contract for

the sale and purchase of 3.41 acres of land, which includes the 1.96 acres in dispute. Under the terms of this contract, Raggio is entitled to possession during performance, but title is retained by Luddy. A deed conveying a good and merchantable title is to be executed and delivered by Luddy when performance is complete.

Plaintiffs' amended complaint is in the usual form of a complaint to quiet title to real estate, except that it does not allege title in fee in plaintiffs, but only that they are the owners and in possession and entitled to possession of a parcel of land consisting of a quartz mining claim known as the Never Sweat Lode, particularly describing it, and that at all times in said complaint mentioned there has existed and still exists, in and upon said quartz mining claim, valuable mineral deposits, which fact for many years past has been known to defendants. The prayer, substantially, is that defendants be required to set forth the nature of their claims; that the adverse claims of defendants be determined; that it be adjudged that plaintiffs are the owners of said premises, and that defendants have no estate or interest whatever in said land or premises; that defendants be forever debarred from asserting any claim therein adverse to plaintiffs, and for general equitable relief. The answer denies ownership of said claim by plaintiffs, admits that defendants claim an interest in the premises adverse to plaintiffs, and alleges ownership thereof in fee in the defendants; denies that there exists, or that there ever existed upon the said premises, any valuable mineral deposits; denies that defendants or either of them ever had knowledge of the existence of any valuable mineral deposits in or upon the property described or any part or portion thereof, and alleges that there is not and never has been any mineral deposit of any kind or value in or upon said land or any part thereof. The cross-complaint alleges that on January 12, 1927, the land claimed by Luddy was public domain of the United States; that on said day it was duly patented to him; that Luddy is the owner in fee thereof, and that plaintiffs claim an interest adverse to him. The prayer is to quiet title to the entire 481.97 acres in the defendants. Plaintiffs answered the cross-complaint denying all of the allegations thereof, except as to the issuance of the patent to Luddy, and alleging that there was excepted from the property patented

all minerals in the lands patented, together with the right to prospect for, mine and remove the same; denied that the patent was regularly issued, and alleged that at all times in the cross-complaint mentioned and for many years prior thereto there existed, in and upon the property described in plaintiffs' complaint, valuable mineral deposits, the existence of which was at all times known to defendants and by Luddy concealed from the general land office when he made application for the patent.

Judgment was entered in favor of the defendant Luddy on the cross-complaint, declaring him to be the owner in fee of the 481.97 acres claimed by him, ''except as to all coal and mineral contained therein, together with the right to prospect for, mine and remove the same, subject and pursuant to the provisions and limitations of an Act of Congress entitled 'Stockraising Homestead Act of December 29, 1916' '' (39 Stats. 862), and quieting his title thereto against all claims of the plaintiffs. It was further adjudged that the plaintiffs are the owners, subject to the paramount title of the United States, of all of the Never Sweat Quartz Mining Claim except the 1.96-acre portion thereof in conflict with defendant Luddy's patent, and that as to such portion plaintiffs are the owners, subject to the paramount title of the United States, of all coal and mineral, if any, contained in the land within said conflicting portion of said claim, ''together with the right to prospect for, mine and remove the same subject and pursuant to the provisions and limitations of an Act of Congress entitled 'Stockraising Homestead Act of December 29, 1916' '' (39 Stats. 862), and plaintiffs' title thereto was quieted against the defendants. Defendant Luddy was awarded his costs against plaintiffs. Plaintiffs moved for a new trial, which was denied. The appeal is by plaintiffs and is taken from the judgment.

Plaintiffs contend that the evidence is insufficient to support the findings and that the findings do not support the judgment. It is also urged that the court erred in denying their motion for a new trial.

The only subject matter of the controversy on this appeal is the surface rights in the 1.96 acres brought into conflict by the overlapping descriptions.

The principal point made by plaintiffs is that a valid location having been made and kept alive to the present time by

the performance of all assessment work thereon, the exclusive right to the possession, enjoyment and control of all of the surface included within the lines of their claim, and of all veins, lodes and ledges throughout their entire depth, the top or apex of which lies within such surface lines, extended downward as described in the statutes pertaining to such locations, had become vested in them and that the United States was powerless to deprive them either of their surface rights or their rights to the minerals in the land by subsequent patent to the defendant Luddy. Answering this contention, the defendants assert that the suit is a collateral attack upon the patent and that the land department being a special tribunal vested with judicial power to determine the claims of all parties to the public lands which it is authorized to dispose of, and with power to execute its judgments by conveyances to the parties entitled to them, the issuance of the patent is a conclusive adjudication that the patentee has performed all acts necessary to entitle him to the patent and that the land in dispute is agricultural and not mineral in character; that such adjudication is not open to collateral attack, but can be questioned only in a direct proceeding brought by or on behalf of the United States, or in an equitable proceeding to give relief against the enforcement of rights under a patent fraudulently obtained, and that plaintiffs' suit is not of such character.

We have no doubt of the correctness of the general rule contended for by defendants in respect to the conclusive effect of a patent issued by the land department in a case where it has power or authority to act in the premises. The question before us, however, is whether the mining claim was property of such character that control of the exclusive right to its possession and enjoyment had passed out of the hands of the government and whether in view of the mining laws and the rights guaranteed under them to locators of mining claims on the public domain, the land department had any authority to convey to an applicant for a stock-raising homestead the surface rights previously vouchsafed to the locator under a valid location made and kept good in compliance with such laws. It has frequently been held that a valid location of mineral lands made and kept up in accordance with the statute has the

effect of a grant by the United States of the right of present and exclusive possession of the lands located. (*Belk* v. *Meagher*, 104 U. S. 284 [26 L. Ed. 737] ; *Gwillim* v. *Donnellan*, 115 U. S. 45 [29 L. Ed. 348, 5 Sup. Ct. Rep. 1110].) And that a mining claim is property in the fullest sense of the word. (*Forbes* v. *Gracey*, 94 U. S. 762 [24 L. Ed. 313].) In discussing the nature and character of a mining claim, our Supreme Court, in *Watterson* v. *Cruse*, 179 Cal. 379, at page 382 [176 Pac. 870, 872], said: ''While the paramount fee remains in the government until it has issued its patent, yet as to everyone else 'the estate acquired by a perfected mining location possesses all of the attributes of a title in fee, and so long as the requirements of the law with reference to continued development are satisfied, the character of the tenure remains that of a fee'. (2 Lindley on Mines, 3d ed., sec. 539; *Merritt* v. *Judd,* 14 Cal. 59; *Hughes* v. *Devlin,* 23 Cal. 501; *Buchner* v. *Malloy,* 155 Cal. 253 [100 Pac. 687].) The interest of the locator is treated as a vested estate. (*Hughes* v. *Devlin, supra; Clipper M. Co.* v. *Eli M. Co.,* 194 U. S. 220 [48 L. Ed. 944, 24 Sup. Ct. Rep. 632, see, also, Rose's U. S. Notes].) ''

The following language used by the Supreme Court of the United States in *Clipper M. Co.* v. *Eli M. Co.,* 194 U. S. 220 [48 L. Ed. 944, 24 Sup. Ct. Rep. 632, 634], is applicable to the case before us: ''In *St. Louis Min. & Mill. Co.* v. *Montana Min. Co.,* 171 U. S. 650, 655 [43 L. Ed. 320, 322, 19 Sup. Ct. Rep. 61, 63], the present Chief Justice declared that 'where there is a valid location of a mining claim, the area becomes segregated from the public domain, and the property of the locator'. Nor is this 'exclusive right of possession and enjoyment' limited to the surface, nor even to the single vein whose discovery antedates and is the basis of the location. It extends (so reads the section) to 'all veins, lodes, and ledges throughout their entire depth, the top or apex of which lies inside of such surface lines extended downward vertically'. In other words, entire body of ground together with all veins and lodes whose apexes are within that body of ground becomes subject to an exclusive right of possession and enjoyment by the locator. And this exclusive right of possession and enjoyment continues during the entire life of the location, or, in the words of Chief Justice Waite, just quoted, while

there is 'a valid and subsisting location of mineral lands, made and kept up in accordance with the provisions of the statutes of the United States'. There is no provision for, no suggestion of, a prior termination thereof.''

See, also, *Wilbur* v. *United States ex rel. Krushnic,* 280 U. S. 306 [74 L. Ed. 445, 50 Sup. Ct. Rep. 103].

It is well settled that a patent may be collaterally impeached and its operation as a conveyance defeated by showing that the government had no jurisdiction to dispose of the lands, that is, that the law did not provide for selling them, or that they had been previously reserved from sale or dedicated to special purposes or had previously been transferred to others. (*Van Ness* v. *Rooney,* 160 Cal. 131 [116 Pac. 392]; *Mery* v. *Brodt,* 121 Cal. 332 [53 Pac. 818]; *St. Louis Smelting Co.* v. *Kemp,* 104 U. S. 636 [26 L. Ed. 875]; *Wright* v. *Roseberry,* 121 U. S. 488 [30 L. Ed. 1039, 7 Sup. Ct. Rep. 985].)

In view of the principles enunciated in the cases above referred to, can it be said that the land department had jurisdiction to dispose of the surface rights included within the limits of plaintiffs' mining claim and thus by operation of law withdrawn from the public domain and belonging to them as property having all of the characteristics of a fee and vested in them with all of the force and effect of a grant? If this were so, then much of the valuable mineral land on the Pacific Coast, and indeed in all of the states, would be held by a very weak tenure. It is a matter of common knowledge that since the commencement of the development of the vast mineral resources of this country, mining properties of great value have been held and worked without it being deemed necessary to procure patents from the government. Mills and machinery of stupendous value have been erected and maintained upon the surface of these lands and enormous sums expended in development, upon the faith of the quality and strength of the title acquired by a perfected location kept up by continued assessment work under the laws and policy of our government relative to its mineral lands and their disposition. If titles held by such tenure are subject to devestiture by the issuance to subsequent applicants for patents of agricultural or other classes of lands, upon a procedure whereby constructive notice only may be received

by the mineral locator, then surely a large part of the mining industry of our nation is builded upon an insecure foundation and a strong incentive is furnished for unscrupulous persons to attempt encroachments upon valuable mineral lands by making entry upon adjoining lands under pretext of having no knowledge of the location of the boundaries of such mining claims and including portions thereof in such entry. We do not deem it necessary, however, to extend our remarks upon the principles or policies under consideration in this case, for most of the questions involved have been exhaustively covered by the opinion of our Supreme Court in the case of *Van Ness* v. *Rooney,* 160 Cal. 131 [116 Pac. 392, 395]. That was a case where plaintiff sued to quiet his title to a quartz mining claim, which he proved had been validly located and continuously developed as required by law, against defendant who was the successor in interest of the Central Pacific Railroad Company, which had received a patent from the government subsequent to the mining location and covering the same land. It was contended in that case, as here, that the suit was an unauthorized attack upon the patent and that the issuance of the patent constituted a conclusive adjudication that the lands included therein were not mineral lands. The patent contained a reservation of "all mineral lands should any such be found" in the tracts granted, with the exception of coal and iron lands. While recognizing that such reservation did not include mineral lands discovered for the first time after the issuance of the patent, the court held that known mineral lands which were such at the date of the patent did not pass thereby. Its decision was not based upon the construction of the reservation in the patent alone, however, but also upon the broader grounds that known mining claims do not pass by a subsequent patent of the land covered thereby and that the government has no power to convey property that has already passed to others. In this regard the court said: "As a general proposition, and as applied to the disposition of its public lands by the government of the United States, the rule contended for by appellants is undoubtedly true. The land department is vested with special power to determine the claims of different persons to public lands it is authorized to dispose of. The duty is cast upon it to determine the

character of the public lands. as to whether it is mineral land reserved under the provisions of the general law from sale, or agricultural or other land of which it may make disposition. The determination of this question of the character of the land being given to the land department, the general rule is that the issuance of a patent is a conclusive determination that the land is agricultural or of such other character as might be disposed of under the general law providing for the disposition of public lands and not mineral land reserved from sale, and the effect of the issuance of a patent to the land as agricultural land is to transfer to the patentee all mineral deposits which may be subsequently discovered within its boundaries but which were not known to exist at the time the patent was issued. While this is the general rule as to vesting in the patentee of agricultural land the title to all mineral deposits, the existence of which were unknown when the patent was issued, the rule is equally established that mineral deposits known to exist in the land at the time the patent was issued do not pass under it." (*Van Ness* v. *Rooney,* 160 Cal. 131 [116 Pac. 392, 395]; see, also, *Belk* v. *Meagher,* 104 U. S. 279 [26 L. Ed. 735]; *Golden* v. *Murphy,* 31 Nev. 395 [103 Pac. 394, 105 Pac. 99]; *Deffeback* v. *Hawke,* 115 U. S. 392 [29 L. Ed. 423, 6 Sup. Ct. Rep. 95]; *Mantle* v. *Noyes,* 5 Mont. 274 [5 Pac. 856]; *Noyes* v. *Mantle,* 127 U. S. 348 [32 L. Ed. 168, 8 Sup. Ct. Rep. 1132]; *Silver Bow Min. & M. Co.* v. *Clarke,* 5 Mont. 378 [5 Pac. 570]; *Butte City Smokehouse Lode Cases,* 6 Mont. 397 [12 Pac. 858].)

What constitutes known mineral land has been the subject of much discussion by the courts. ▮ In order to bring land within the class subject to mineral entry it must be shown that the land is known at the time to be valuable for its minerals and that minerals are found in such quantities as to justify expenditures in the effort to extract them. The mere fact that the land contains particles of mineral or veins of mineral-bearing rock does not necessarily impress it with the character of mineral land within the meaning of the laws reserving mineral lands from entry for agricultural purposes. (*Alford* v. *Barnum,* 45 Cal. 482; *Madison* v. *Octave Oil Co.,* 154 Cal. 768 [99 Pac. 176]; *Diamond Coal & Coke Co.* v. *United States,* 233 U. S. 236 [58 L. Ed. 936, 34 Sup. Ct. Rep. 507]; note 21, title 30,

chap. 2, p. 37, U. S. C. A.) Whether the land in dispute in the case at bar was known to be valuable for its mineral deposits was an issue in the case. ▉ In finding that plaintiff was the owner of the Never Sweat Claim, the trial court necessarily found that such claim was upon mineral land, for a valid quartz mining claim cannot be made without a discovery of a vein or lode containing mineral within its limits. This discovery is the very basis of a valid quartz claim. (*McElligott* v. *Krogh,* 151 Cal. 126 [90 Pac. 823·].) Without a discovery of mineral, that is, mineral deposits in sufficient quantity and of sufficient value to classify the land as mineral land, the trial court could not have found in favor of a valid location and thus quieted plaintiffs' title even to the portion of said claim not in conflict, for plaintiffs were entitled to that relief only upon the strength of their own title. (Lindley on Mines, sec. 176.) Indeed, we are compelled to conclude that no other finding could have been made under the law applicable to this case in view of the undisputed showing of compliance with the law in respect to the location and continued development of the claim. In so concluding we have not overlooked the many cases cited by defendants in their briefs and by their counsel on oral argument to the effect that there must be a point of time at which the character of land as mineral is to be determined by the government and that this point of time is at the granting of a patent and when then determined is conclusive. That this general rule exists cannot be denied. Many cases of our own and the United States courts have announced it. We have been unable to find, however, any case which has applied the rule where the patentee's rights were initiated subsequently to the date when the mining claimant's rights attached and where the courts gave full consideration to facts similar to those before us. But we do find that the courts have held that there is another point of time at which the character of known mineral lands can be fixed so as to prevent the government exercising any effective authority to deprive mining claimants of rights duly·initiated and maintained under the mining laws. The United States Supreme Court in *Noyes* v. *Mantle,* 127 U. S. 348 [32 L. Ed. 168, 8 Sup. Ct. Rep. 1132, 1135], in considering the effect of a patent for a placer claim upon a previously located quartz claim

in conflict therewith, said: "Where a location of a vein or lode has been made under the law, and its boundaries have been specifically marked on the surface so as to be readily traced, and notice of the location is recorded in the usual books of record within the district, we think it may safely be said that the vein or lode is known to exist, although personal knowledge of the fact may not be possessed by the applicant for a patent of a placer claim. The information which the law requires the locator to give to the public must be deemed sufficient to acquaint the applicant with the existence of the vein or lode. A copy of the patent is not in the record, so we cannot speak positively as to its contents; but it will be presumed to contain reservations of all veins or lodes known to exist pursuant to the statute. At any rate, as already stated, it could not convey property which had already passed to others. A patent of the United States cannot, any more than a deed of an individual, transfer what the grantor does not possess."

This case was quoted with approval in *Van Ness* v. *Rooney, supra.* In the last-mentioned case the court commented upon several California cases relied upon as supporting the doctrine that a patent is conclusive against collateral attack and distinguished them as being cases where the attack on the patent was made by junior claimants. We note that some of these distinguished cases are relied upon by the defendants here, namely, the cases of *Jameson* v. *James,* 155 Cal. 275 [100 Pac. 700], and *Saunders* v. *La Purisima etc. Co.,* 125 Cal. 159 [57 Pac. 656]. The court said: "But the plaintiff here is not a junior claimant. He had made a valid mining location and initiated his title to his mining claim in the quarter section in question nearly six months before the issuance of the patent to the railroad company, and as the law is that mineral deposits whose existence are known when the patent is issued do not pass under it, the patent was ineffectual to transfer any title to the appellants as to the mining claim of the respondent." (*Van Ness* v. *Rooney, supra.*)

It is plain that the same distinction applies in the case before us.

This court has held that when a locator has made his discovery and located his claim and done his assessment work each year since location, it must be held that the land is

valuable for mining. (*Batt* v. *Stedman,* 36 Cal. App. 608 [173 Pac. 99].)

Defendants urge that *Van Ness* v. *Rooney, supra,* is distinguishable from this case in that by the terms of the patent therein all ''mineral lands'' were specifically and expressly excepted from the grant. We have already observed that had the lands not been known mineral lands at the date of the patent they would have passed and their status would have been established as nonmineral by the action of the land department in issuing the patent and that the decision was not based wholly upon the language of the grant. It was the law when plaintiffs' predecessors made their location, and still is the law, that mineral lands are reserved from sale except as otherwise expressly provided by law (Rev. Stats. U. S., 2318; title 30, chap 2, sec. 21, U. S. C. A., and notes); that a mining claim gives surface as well as subsurface rights to all lands included within the lines of the location (Rev. Stats. U. S., 2322; title 30, chap. 2, sec. 26, U. S. C. A.), and that mineral lands are not liable to homestead entry (Rev. Stats. U. S., 2302; title 43, chap. 7, sec. 201, U. S. C. A.). Whatever may have been the effect of the enactment of the Stockraising Homestead Act of December 29, 1916, upon the existing policy of the United States in respect to the disposition of its mineral lands and upon existing statutes guaranteeing to lode claimants surface rights in their claims, we think it plain that such legislation, in providing for a reservation to the United States of all coal and other *minerals in the land* (italics ours), a provision found in the defendant Luddy's patent and which defendants claim distinguishes this case from that of *Van Ness* v. *Rooney, supra,* did not have any effect retroactively upon the rights of plaintiffs to their claim located long previous to such enactment. ■ Plaintiffs' right to the surface of their claim being a valuable property right vested in them could no more be taken away from them by subsequent legislation than impaired by subsequent grant. (*Favot* v. *Kingsbury,* 98 Cal. App. 284 [276 Pac. 1083]; *Silver Bow Min. & M. Co.* v. *Clark,* 5 Mont. 378 [5 Pac. 570].) ■ Furthermore, the mining statutes are, in effect, an offer by the government to sell the public mineral lands to the locator, who by making a valid location thereon accepts the offer and thereby closes the contract of pur-

chase, and on compliance with its terms becomes entitled to a conveyance. (*Mantle* v. *Noyes,* 5 Mont. 274 [5 Pac. 856], affirmed in *Noyes* v. *Mantle,* 127 U. S. 348 [32 L. Ed. 168, 8 Sup. Ct. Rep. 1132]; *Silver Bow Min. & M. Co.* v. *Clark,* 5 Mont. 378 [5 Pac. 570]; *Butte City Smokehouse Lode Cases,* 6 Mont. 397 [12 Pac. 858].) This being so, to give any retroactive effect to said Stockraising Homestead Act would impair the obligation of the contract, which cannot lawfully be done. It is not necessary for us to construe the patent to Luddy, as we base our conclusion that it is ineffective to convey any surface title to him as to the 1.96 acres in dispute upon the statutes which gave such surface rights to plaintiffs' predecessors and the rule which declares that the government has no power to grant that which it has already by virtue of its laws and a compliance therewith assured to another with all of the force and effect of a grant.

■ Defendants deny the right of plaintiffs to maintain this action, basing this contention upon the rule that the owner of an equitable title cannot quiet his title against the owner of the legal title. (*De Leonis* v. *Hammel,* 1 Cal. App. 390 [82 Pac. 349]; *Kline* v. *Lange,* 91 Cal. App. 400 [267 Pac. 130]; *Newport* v. *Hatton,* 195 Cal. 132 [231 Pac. 987]; *Fouch* v. *Johnston,* 199 Cal. 437 [249 Pac. 852].) It is too well settled to require comment that this rule does not apply to suits to quiet title to mining claims. (17 Cal. Jur. 521; *Van Ness* v. *Rooney, supra.*)

The conclusions we have reached make it unnecessary to pass upon the question of whether plaintiffs have properly pleaded or have proven fraud and the other related points discussed in the briefs.

■ Plaintiffs suggest that it was improper to include in the cross-complaint property other than that described in the complaint. It has been held that a cross-complainant may obtain relief affecting additional land when his cause of action includes such additional land as well as that with which the plaintiff is concerned. (21 Cal. Jur. 81; *Stockton Sav. & L. Soc.* v. *Harrold,* 127 Cal. 612 [60 Pac. 165].) We have not gone into this subject with relation to the issues in this case, however, in view of plaintiffs' admission that they are not injured by the decree as to the additional land.

From a consideration of the entire record it appears that the trial court was in error in quieting defendant Luddy's title to the surface or any part of the 1.96 acres in conflict and in refusing to quiet plaintiffs' title to the whole of the Never Sweat Claim. Upon the record herein (see *Tupman* v. *Haberkern,* 208 Cal. 256 [280 Pac. 970] ; *Edwards* v. *Jenkins et al.,* 214 Cal. 713 [7 Pac. (2d) 702]), we find that the plaintiffs' claim was not a part of the public domain open to a stock-raising homestead entry at the time Luddy made entry on the land including said 1.96 acres thereof or at the time he secured his patent; that the patent purporting to cover said 1.96 acres did not convey the same to Luddy; that the Never Sweat Quartz Mine claim, as described in plaintiffs' amended complaint, at all times mentioned in the pleadings contained valuable mineral deposits and were known by defendants to contain such ; that plaintiffs are the owners of said claim, including the surface, subject to the paramount title in the United States; and that defendant Luddy is the owner in fee of the lands described in the Luddy patent, subject to the reservations contained therein, excepting that portion thereof in conflict with said Never Sweat Quartz Mine claim.

The cause is remanded with direction to the trial court to modify the judgment by quieting plaintiffs' title to the whole of the mining claim, including the surface of the 1.96 acres in conflict, and by denying defendants relief as to any. portion of said claim, surface or otherwise, and by awarding plaintiffs their costs. In all other respects the judgment is affirmed. Appellants to recover their costs on this appeal.

Preston, P. J., and Thompson (R. L.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 9, 1932, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 9, 1932.