[Civ. No. 5512.   Third Appellate District.—May 26, 1936.]

HERBERT W. WHITTEN et al., Respondents, v. R. C. YOUNG, Appellant.

Charles L. Gilmore for Appellant.

Herbert W. Whitten, *in pro. per.*, and Ware & Ware for Respondents.

STEEL, J., *pro tem.*—This is an appeal by defendant and appellant Young from a judgment in favor of plaintiffs and respondents permanently enjoining appellant from exercising any acts of possession, and from removing ore from the premises involved, together with damages for the unlawful removal of such ore during the time appellant was in possession.

The facts may be summarized as follows: The action primarily is in the form of an action to quiet title to certain lands in the county of Butte, included within which is a twenty-acre tract, being the premises in dispute here.

Respondents claim title pursuant to a decree quieting title made in 1916, also the uninterrupted use and possession and the payment of all taxes levied or assessed upon the premises since such decree. In 1922 a patent issued upon the premises in question by the United States to the Central Pacific Railway Company under an act of Congress of July 25, 1866 (14 Stats. 239).

Appellant bases his claim, first, as a copartner of lessees under a written lease dated July, 1933, and executed by the respondents herein to George Mostica and C. Callaway, and second, by virtue of a certain lease agreement dated August, 1932, executed to him by George Archibald and others, based on a mining location alleged to have been made by the lessors upon said property.

The evidence discloses that since the decree quieting respondents' title they have exercised the usual acts of dominion over the property, including the payment of all taxes and the actual mining thereof during the first two or three years of their occupancy. In July of 1933, respondents executed a lease and option to purchase the premises to Mostica and Callaway, who thereupon entered into possession and performed certain mining operations thereunder. In December of the same year it appears the lease aforesaid was canceled by written, mutual consent of the parties endorsed thereon, and the lessees thereupon assigned to respondents certain

equipment and personal property then upon the premises and executed and delivered to respondents a quitclaim deed to said premises.

Appellant claims to have been instrumental in obtaining this lease; that .he entered upon the property as a cotenant with the lessees Mostica and Callaway; that he thereupon asserted an interest in the property, which claim or interest was brought to the attention of the plaintiff Whitten.

The evidence fails to establish any recognition by the respondents, or either of them, of the rights claimed to have been asserted by appellant, either as lessee, cotenant, copartner, or otherwise. On the contrary, the record discloses that respondents refused to accept royalties tendered by appellant, or negotiate with him at all with reference thereto.

As to the second claim asserted by appellant, as arising by virtue of the mining location lease, the testimony shows that in August, 1932, one Frank and George Archibald, together with two associates, entered into a lease agreement with appellant whereby a portion of the premises involved herein and referred to as "Associated 4 Claim" were demised to appellant for a period of years, with rental payable upon a royalty basis. It may be mentioned that the Archibalds first entered upon the premises in the early part of 1931, after having first sought and obtained the permission of respondent Whitten so to do, and thereafter located the claim referred to. Certain development work was done under this arrangement, ore removed and shipped to the smelter up until July, 1933, when the Mostica-Callaway lease came into existence, after which appellant claims to have operated as a copartner under said last-mentioned lease.

We find nothing in the record sufficient to establish any rights accruing to appellant as against the respondents herein, in so far as the Mostica-Callaway lease is concerned. The lease specifically provides against sale, assignment or transfer of any interest of lessees, or subletting said premises, or any part thereof, without first having obtained the written consent of lessors. No claim is made that such consent was given.

Appellant attacks the legal sufficiency of respondents' title, and contends that it has not been connected up with the railway company as patentee.

While there is no documentary evidence in the record of such conveyance, respondent Whitten testified that prior to

the quiet title suit in 1916, the Central Pacific Railway Company conveyed the premises in question to plaintiffs' predecessors in interest. This was not disputed. The rule is well settled that a grant carries an after-acquired title or claim of title. (Sec. 1106, Code Civ. Proc.) Even a quitclaim deed, while not ordinarily passing an after-acquired title, has been held to have this effect in similar cases, upon the ground that the title transferred by the patent relates back to the initiation of the proceedings to acquire the government title, and consequently inures to the benefit of the person to whom the holder of the certificate of purchase conveyed. (*Wholey* v. *Cavanaugh*, 88 Cal. 132 [25 Pac. 112]; *Stanway* v. *Rubio*, 51 Cal. 41.)

Appellant further contends that the patent is now subject to collateral attack upon the ground the land was known mineral land at the time the patent issued.

In the leading case of *Burke* v. *Southern Pacific Co.*, 234 U. S. 669 [34 Sup. Ct. 907, 58 L. Ed. 1527], the law has been definitely settled that the mineral reservations in patent are void, and that the patent is conclusive as to the character of the land against a collateral attack. The Burke case, *supra*, does not hold, however, that mineral lands known to be such, at or prior to issuance of patent, pass to the patentee. It may be reasonably accepted that if the existence of such minerals were called to the attention of the authorities charged with determining the character of the land, the patent would not issue, or, as the Burke case holds, if granted, would render it subject to a direct attack by the United States, or those in privity with the government, on the ground of fraud, mistake or irregularity, or a suit to declare a trust thereunder.

The foregoing seems to be the only basis for an attack, once the patent issues. (*Vore* v. *Ephraim*, 173 Cal. 245, 248 [159 Pac. 719].)

One claiming under a mining location made after the issuance of patent is not in privity with the government, and may not attack the patent collaterally on the ground of fraud or mistake. (*Vore* v. *Ephraim*, *supra*.) Appellant cites the case of *Brown* v. *Luddy*, 121 Cal. App. 494 [9 Pac. (2d) 326], in support of his position. That case, however, dealt with a patent issued under an act of Congress entitled, ''The

Stock Raising Homestead Act of December 29, 1916'', and is not applicable to the facts in the instant case.

In *Brown* v. *Luddy, supra,* the case of *Van Ness* v. *Rooney,* 160 Cal. 131 [116 Pac. 392], is cited among other cases, and it may be said that considerable confusion and uncertainty existed as to the law in California upon the subject at that time and prior to the decision of the United States Supreme Court in *Burke* v. *Southern Pacific Co., supra,* and the later decision of our Supreme Court in the case of *Vore* v. *Ephraim, supra,* which definitely settled the law in this state upon the subject considered.

The judgment is affirmed.

Thompson, J., and Pullen, P. J., concurred.