[Civ. No. 8912.   Third Dist.   Dec. 6, 1956.]

MACIE I. MONTGOMERY, Respondent, v. E. E. GERLINGER et al., Appellants.

Chas. L. Gilmore for Appellants.

Frank W. Shuman for Respondent.

VAN DYKE, P. J.—Appellants are the owners of three unpatented mining claims initiated by location in 1920 and 1928. Respondent claims title to the lands within the claims by virtue of a patent issued to her by the United States government in 1954, after her purchase of a larger tract of land containing the claims as a preference right bidder pursuant to 43 United States Code Annotated, section 1171, which authorizes the sale of certain portions of the "public domain." Respondent brought an action to quiet title and appellants, by answer and cross-complaint, set up their location title to the mining claims.

The court made the following findings: Appellants have been, ever since the respective dates of location, the owners in possession and entitled to the possession of the placer mining claims. Appellants and their predecessors have maintained possession of the claims at all times and have performed all the required annual labor to maintain their locations. The locations and each of them were based upon a discovery of a valuable mineral in each event, to wit, gold, and the claims are valid mining claims valuable for mineral content. On January 12, 1954, patent was issued to respondent subject only to the reservation of fissionable materials. At no time has the United States instituted any proceedings against appellants questioning the validity of their mining locations.

The court gave judgment quieting the title of respondent to all of the land which she had purchased from the government except the mining claims. As to the mining claims it was adjudged as follows: Appellants have only a possessory interest in said mines and mining claims including the right to the exclusive possession of the surface thereof and the right to mine the same. These rights are subject to compli-

ance by appellants with the mining laws of Congress providing for the performance of annual labor, failing in which said mining claims shall revert. Appellants have the right to acquire the title to the claims by further compliance with and the purchase of the land as provided by the laws of Congress, but respondent is the owner of the freehold and appellants are forever enjoined from asserting any right or title thereto. Appellants have appealed from that part of the judgment affecting their interest in the mining claims.

We think the wrong conclusions have been drawn from the facts found and that the legal issues here in controversy are all settled by the opinion rendered in *Brown* v. *Luddy,* 121 Cal.App. 494 [9 P.2d 326], in which case a hearing was denied by the Supreme Court. In the cited case Luddy had obtained a patent based on application for a stock-raising homestead and the lines of the land described in the patent overlapped a mining claim located on the public domain by Brown's predecessor in interest long before Luddy applied for his patent. All requirements of law in respect to mining locations had been fulfilled, but no patent had issued. Answering the contention that Brown's quiet title action constituted a collateral attack upon the patent which was not permissible the court said that it conceded the conclusive effect of a patent issued by the land department in a case where it had power or authority to act, but that the question before the court was whether the mining claim was property of such character that the control of the exclusive right to its possession and enjoyment had passed out of the hands of the government and whether, in view of the mining laws and the rights guaranteed under them to locators of mining claims on the public domain, the land department had any authority to convey to an applicant for a stock-raising homestead the surface rights previously vouchsafed to the locator under a valid location made and kept good in compliance with such laws. These questions were answered in favor of Brown. In arriving at the decision the court referred to numerous decisions of both the federal courts and the California courts. Treating of the nature of valid mining locations it said, at page 499:

". . . It has frequently been held that a valid location of mineral lands made and kept up in accordance with the statute has the effect of a grant by the United States of the right of present and exclusive possession of the lands located."

Quoting from *Watterson* v. *Cruse,* 179 Cal. 379, 382 [176 P. 870], the court said:

" 'While the paramount fee remains in the government until it has issued its patent, yet as to everyone else "the estate acquired by a perfected mining location possesses all of the attributes of a title in fee, and so long as the requirements of the law with reference to continued development are satisfied, the character of the tenure remains that of a fee." ' "

The court quoted the following from *Clipper Min. Co.* v. *Eli Min. & Land Co.,* 194 U. S. 220 [24 S.Ct. 632, 48 L.Ed. 944]:

" 'In *St. Louis Min. & Mill. Co.* v. *Montana Min. Co.,* 171 U. S. 650, 655 [43 L.Ed. 320, 322, 19 Sup. Ct. Rep. 61, 63], the present Chief Justice declared that "where there is a valid location of a mining claim, the area becomes segregated from the public domain, and the property of the locator." Nor is this "exclusive right of possession and enjoyment" limited to the surface, nor even to the single vein whose discovery antedates and is the basis of the location. It extends (so reads the section) to "all veins, lodes, and ledges throughout their entire depth, the top or apex of which lies inside of such surface lines extended downward vertically." In other words, *the entire body of ground* together with all veins and lodes whose apexes are within that body of ground becomes subject to an exclusive right of possession and enjoyment by the locator. And this exclusive right of possession and enjoyment continues during the entire life of the location, or, in the words of Chief Justice Waite, just quoted, while there is "a valid and subsisting location of mineral lands, made and kept up in accordance with the provisions of the statutes of the United States." There is no provision for, no suggestion of, a prior termination thereof.' " (Italics ours.)

Referring to *Van Ness* v. *Rooney,* 160 Cal. 131, the court said, at page 502 [116 P. 392]:

". . . Its decision was not based upon the construction of the reservation in the patent alone, however, but also upon the broader grounds that known mining claims do not pass by a subsequent patent of the land covered thereby and that the government has no power to convey property that has already passed to others."

In *Brown* v. *Luddy, supra,* the character of the land in dispute, as to being land known to be valuable for its mineral deposits, was an issue in the case. But in this case the finding of the court is that the locations were based upon discoveries

of valuable minerals and the claims were valid mining claims, which, of course, means also that the locators had duly recorded their locations, thus giving constructive notice to the world that the lands involved were claimed as mining locations. ██ The following was said (pp. 504-505):

". . . [T]he courts have held that there is another point of time at which the character of known mineral lands can be fixed so as to prevent the government exercising any effective authority to deprive mining claimants of rights duly initiated and maintained under the mining laws. The United States Supreme Court in *Noyes* v. *Mantle,* 127 U. S. 348 [32 L.Ed. 168, 8 Sup.Ct.Rep. 1132, 1135], in considering the effect of a patent for a placer claim upon a previously located quartz claim in conflict therewith, said: 'Where a location of a vein or lode has been made under the law, and its boundaries have been specifically marked on the surface so as to be readily traced, and notice of the location is recorded in the usual books of record within the district, we think it may safely be said that the vein or lode is known to exist, although personal knowledge of the fact may not be possessed by the applicant for a patent of a placer claim. The information which the law requires the locator to give to the public must be deemed sufficient to acquaint the applicant with the existence of the vein or lode. A copy of the patent is not in the record, so we cannot speak positively as to its contents; but it will be presumed to contain reservations of all veins or lodes known to exist pursuant to the statute. *At any rate, as already stated, it could not convey property which had already passed to others. A patent of the United States cannot, any more than a deed of an individual, transfer what the grantor does not possess.*' " (Italics ours.)

Although in *Noyes* v. *Mantle,* 127 U. S. 348 [8 S.Ct. 1132, 32 L.Ed. 168], the court was discussing the location of a vein or lode what is said applies, perhaps with even greater force, to a placer mining location which is required, where practical, to follow the public surveys, which the locations here in question did. In further support of its holding that the general government was without power to patent to others land held under valid mining locations and known to contain minerals, the court said (pp. 506-507):

". . . [T]he mining statutes are, in effect, an offer by the government to sell the public mineral lands to the locator, who by making a valid location thereon accepts the offer and thereby closes the contract of purchase, and on compliance

with its terms becomes entitled to a conveyance. . . . It is not necessary for us to construe the patent to Luddy, as we base our conclusion that it is ineffective to convey any surface title to him as to the 1.96 acres in dispute upon the statutes which gave such surface rights to plaintiffs' predecessors and the rule which declares *that the government has no power to grant that which it has already by virtue of its laws and a compliance therewith assured to another with all of the force and effect of a grant.*" (Italics ours.)

In addition to what has been said the following observations are pertinent: Respondent obtained her patent pursuant to the provisions of 43 United States Code Annotated, section 1171, which section states that:

". . . [I]t shall be lawful for the Secretary of the Interior to order into market and sell at public auction, at the land office of the district in which the land is situated, for not less than the appraised value, any isolated or disconnected tract or parcel of the *public domain* . . ." (Italics ours.)

While no exception was made in the patent for the mining locations in issue here, nevertheless under the authorities we have referred to those parcels were not part of the public domain and were not thus authorized to be sold by said section 1171. ■ As was said in *Brown* v. *Luddy, supra,* the contract of purchase made with the government by a valid location is a contract within the protection of the federal Constitution. (See also *Lynch* v. *United States,* 292 U. S. 571 [54 S.Ct. 840, 78 L.Ed. 1434, 1441], declaring the rights against the United States arising out of a contract with it are protected by the Fifth Amendment.) ■ Among the rights given to the locators are the following: The right, upon compliance with the terms of the statute, to obtain a patent. The right to apply to the general government for such patent and the right to have that patent issued by the general government if, upon such application, it is shown that the applicant was entitled thereto. To hold that in some manner the fee simple title passed out of the United States and into the hands of a stranger to the contract to whom an application would now have to be made for a conveyance would defeat in part the rights vested in the locators. In this connection it has been said that the land covered by a valid mining location is held in trust by the general government for the benefit of the locator if, as and when he shall become entitled to a patent (*Van Ness* v. *Rooney, supra*), and that the trust continues until either he has abandoned his rights or through

his failure to do the assessment work another has, during such failure, located the land. It is not to be assumed that the federal government ever intended by its patent to transfer the title it held in trust to a stranger to the locator holding adversely to him.

That portion of the judgment which treats of the interests of the appellants in the four mining claims is reversed with instructions to the trial court to enter a decree as against respondent that she has no right, title or interest in said mining claims, and that she be hereafter enjoined from asserting any interest therein.

Peek, J., and Schottky, J., concurred.